the agreed consideration for appellant's right in the school land.

Had appellant sued prior to payment by him of the interest installments, it is doubtless true that appellees could, under proper pleadings, have had full protection against a double recovery, by suitable directions as to the application of the recovery awarded to appellant. But the fact of nonpayment by appellant would not have defeated his cause of action to enforce appellees' contract.

The proposition requires no extensive treatment that a cause of action does not arise from, nor depend upon, any implied promise from a principal to a surety of reimbursement of moneys paid, when the asserted cause of action could have been maintained though the moneys had not been paid.

The principles which support our answer to the certified question were stated by the Supreme Court of Massachusetts in Furnas v. Durgin, 119 Mass. 506, 507 (20 Am. Rep. 341), in the following language:

"But there is no reason why an agreement may not be made which shall bind the party so contracting to pay the debt which another owes, and thus relieve him or his estate from it, and, if the promise thus made is not kept, why the promisee should not recover a sum sufficient to enable him so to do. Such is the construction to be given to the agreement in the case before us. As a consideration for the property conveyed to him, the plaintiff conveyed the Hyde Park estate to the defendant, who contracted not to indemnify the plaintiff against, but to pay, the mortgages upon it, and, if he has failed to do this, the plaintiff should be entitled to recover the amount which the defendant thus agreed to pay. It is a portion of the consideration money due the plaintiff, which he was to receive by payment of a debt for which he was liable, which he thus recovers, when the defendant fails to perform his promise."

See, also, Chancellor of New Jersey v. Towell, 80 N. J. Eq. 223, 82 Atl. 861, 39 L. R. A. (N. S.) 365, Ann. Cas. 1914A, 710; Blood v. Crew Levick Co., 177 Pa. 606, 35 Atl. 871, 55 Am. St. Rep. 744; 1 Jones on Mortgages, § 750.

Our answer to question 1 renders it unnecessary to answer question 2.

---

**CITY OF HOUSTON v. SCOTTISH RITE BENEV. ASS'N et al. (No. 2910.)***

(Supreme Court of Texas. May 4, 1921.)

**1. Taxation ⬅241(1)—No buildings within constitutional authority for exemption unless owned and used exclusively by public charity.**

No building comes within the exemption from taxation authorized by Const. art. 8, § 2, unless it is both owned and used exclusively by an institution of purely public charity.

**2. Constitutional law ⬅18—Presumption conclusive that people adopted constitutional provision with knowledge of intent as declared by Supreme Court.**

Where the language of Const. art. 8, § 2, authorizing the exemption from taxation of buildings used exclusively, and owned, by institutions of purely public charity, as construed by the Supreme Court, was carried without change into the subsequent amendment of the section, the presumption is conclusive that the people readopted the provision with knowledge of its declared intent.

**3. Taxation ⬅241(1)—Legislature might conclude benevolent association was an institution of "purely public charity."**

The Legislature might reasonably conclude that an institution was one of "purely public charity" within Const. art. 8, § 2, authorizing exemption from taxation of buildings used exclusively, and owned, by institutions of purely public charity where, first, it made no gain or profit, second, it accomplished ends wholly benevolent, and, third, it benefited persons, indefinite in numbers and in personalties by preventing them, through absolute gratuity, from becoming burdens to the state.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Purely public charity.]

**4. Taxation ⬅241(3)—Scottish Rite Benevolent Association a purely public charity within constitutional authorization of exemption.**

In view of the purpose for which a Scottish Rite Benevolent Association was formed and the philanthropies which it practiced, held that such institution was an institution of purely public charity within Const. art. 8, § 2, providing that the Legislature may exempt from taxation all buildings owned by such an institution; as a charity need not be universal to be public.

**5. Taxation ⬅241(1)—Constitutional exemption authorization not satisfied by charity's letting building to obtain revenue.**

It does not satisfy Const. art. 8, § 2, authorizing the Legislature to exempt from taxation a building of an institution used exclusively and owned by an institution of purely public charity, that the use of the building by others than the institution was permitted by the owner to obtain revenues to be devoted entirely to its work of public charity, nor is the requirement satisfied by the fact that those sharing the use pay no rent, as the actual direct use must be exclusive on the part of the charity.

**6. Taxation ⬅241(1)—Building of Scottish Rite Benevolent Association used by Masonic lodges not used exclusively by institution of purely public charity.**

To the extent that the property was used by Masonic lodges whose activities included fields other than charity, it was not and could not be used exclusively by an institution of purely public charity, within Const. art. 8, § 2, authorizing the Legislature to exempt from taxation a building owned and used exclusively by such an institution.

Certified Question from Court of Civil Appeals of First Supreme Judicial District.

Suit to recover taxes by the City of Houston against the Scottish Rite Benevolent Association and another. From a judgment for defendants, plaintiff appealed to the Court of Civil Appeals, which affirmed. On motion for rehearing, the Court of Civil Appeals certified the question: Was the property of the association exempt from taxation? Question answered in the negative.

J. C. Hutcheson, Jr., City Sol., of Houston, for appellant.

Baldwin & Baldwin, of Houston, and Ball & Seeligson and C. W. Trueheart, all of San Antonio, for appellees.

### Certified Question.

GREENWOOD, J. In this case the parties made the following agreement:

"On the trial of the above-entitled and numbered cause the same is and hereby be submitted upon the agreed statement of facts hereinafter set forth, which said statement constitutes all the facts presented at the trial, and that the sole and only question to be determined by the trial court, as well as the Court of Civil Appeals and the Supreme Court, in the event of an appeal, is as to whether or not, under the agreed statement of facts, the defendant, the Scottish Rite Benevolent Association, of Houston, Tex., is liable to the payment of taxes, under the Constitution and laws of the state of Texas, or is said property exempt from taxation? If exempt, then judgment shall be rendered for the defendants. If not exempt, then judgment to be rendered for the plaintiff for the sum of $378.11, which amount is the taxes, interest, penalties, and costs for the years 1908, 1909, 1910, 1911, and 1912, and for foreclosure of plaintiff's tax lien on the property described in paragraph 4 of this agreement, against both defendants, the Magnolia Camp, No. 13, W. O. W., being a party defendant, and because it is the present owner of the property.

### "Agreed Statement of Facts.

"I. That on the 20th day of March, 1903, the state of Texas issued to the defendant the following charter:

" 'State of Texas, County of Harris.

" 'Know all men by these presents, that the members of the Ancient and Accepted Scottish Rite of Freemasonry, of the city of Houston, county of Harris, and state of Texas, are desirous of becoming a body corporate.

" '1. The name of said corporation shall be "The Scottish Rite Benevolent Association, of Houston, Texas."

" '2. The purpose for which said corporation is formed is to provide for the relief of needy Masons, their wives, widows, mothers, and children, with the right to own, sell, or mortgage real estate, for the use of said corporation, and to sue and be sued by its corporate name.

" '3. This corporation shall have its place of business in the city of Houston, county of Harris, state of Texas.

" '4. That the term for which corporation shall exist shall be fifty years.

" '5. That said corporation has neither capital stock nor assets.

" '6. The trustees of said corporation shall be five in number, and for the first year the following named persons shall be trustees: W. S. Hoskins, Max Taub, J. S. Wilson, J. C. Baldwin, and A. J. Schureman, who each and all reside in the city of Houston, in Harris county, Texas.'

"II. The above charter was duly signed, acknowledged, filed, and accepted in the Secretary of State's office, and issued as required by law.

"III. That the members of the 'Ancient and Accepted Scottish Rite of Freemasonry of the City of Houston,' referred to in the charter, include all members of the San Jacinto Lodge of Perfection, No. 6, and Houston Chapter Rose Croix, No. 5.

"IV. The corporation during the years above mentioned was the owner of lot 8 and 25x25 feet off lot 11, and 25x25 feet off lot 12, and adjoining lot 8, and facing 50 feet on La Branch street and running back 125 feet parallel with Rusk avenue, being in the city of Houston, on the S. S. B. B., Harris county, Texas, together with the improvements thereon which consist in what is termed and styled the 'Scottish Rite Cathedral,' this being the only improvement on said property, and being a lodge room for the members of said association. The lot and the building situated thereon are actually used exclusively by members of the association, and no part of the same is rented or used by any other person or institution. That the association owns no property used with a view of profit. That it has no capital stock, and declares no dividends.

"V. The regular meetings of San Jacinto Lodge of Perfection, No. 6, are held in said lodge room on the fourth Thursday of each month, and of the Houston Chapter of Rose Croix, No. 5, on the first Friday of each month. There are often held called meetings of the lodges. Each member pays annual dues of $2.50, while persons applying for and taking degrees pay to the order $50. The sums derived from these sources, as well as from all other sources, over and above the current necessary running expenses, are used for the purpose, and for no other purpose, except as shown in paragraph 7 hereof, than the relief of needy Masons, their wives, widows, mothers, and children, this relief not being confined to members of this local association, but to any and all needy masons, their wives, widows, mothers, and children, when they are not able to provide for themselves.

"There are no salaried or paid officers; there is no rule in the ritual or by-laws relative to what disposition shall be made of its funds. The only reference thereto is found in the charter of the association.

"VI. The funds of the Scottish Rite Benevolent Association are voted to it by the San Jacinto Lodge of Perfection, No. 6, and the Rose Croix Chapter, No. 5. These two organizations are Scottish Rite Masonic Lodges, the membership consisting of Masons who have attained the 14th and 18th degree. The funds of these two bodies are derived from fees of initiation and dues of members.

"The fees of initiation are $22.50 for the Lodge of Perfection and $25 for the Rose Croix Chapter, making a total of $47.50. Dues of $2.50 per year for both bodies. In addition

to these funds, at each stated meeting of the Lodge of Perfection and Rose Croix, the Box of Fraternal Assistance is passed, with the admonition to contribute to the relief of the poor and distressed such sum as the member is. accustomed to spend needlessly each day. This fund derived from the Box of Fraternal Assistance is delivered into the hands of the almoner, who disposes of it to whomsoever may need it, irrespective of affiliation or condition, such as may appeal to him. No report being made of the funds to either body.

"The funds secured from these two bodies have been invested in a home for those bodies to enable them to pursue their work as Masonic lodges, and at stated times, and when brought before the bodies, some of the money is appropriated for various charitable purposes. These charities being dispensed to persons whether or not they are Masons, the word 'Mason' including all members of Masonic families and dependents. There is no revenue received by the association, except some contributions from the two Masonic lodges named above. The officers draw no salaries.

"VII. This institution is conducted for the benefit of the Masonic order. All the money received from the two Masonic lodges mentioned is used for the members' benefit, except amounts voted to charities on motion made by some brother. The charities for which money is voted are not required by the rules or by-laws of the order to be institutions which are connected with Masonic orders. There is no provision in the rules or by-laws that requires how the money shall be spent, except the purpose being to provide for the organization, so that they may have a home at which they can meet at the least possible expense, in order to carry out the purposes of fraternal unity. The prime object is that the funds are to be expended for the relief of families of needy Masons, or for founding or supporting homes or institutions for Masons. The larger portion of the money has been given to needy individuals, $500 being spent during the Galveston flood, and contributions have been made to the Harris County School for Girls, the Industrial Home for Girls, and sev-, eral other organizations. The order is not one that does nothing but dispense charity, but it does dispense charity. The main purpose of the order is to provide a lodge and place of meeting, and to look after and provide for individual Masons and their families. The almoner is not given any instructions requiring him to confine the donations to the family of Masons, or to give them preference in the distribution of the fund, and the contribution of the almoner constitutes a real, substantial contribution, so that he always has money for distribution."

The Court of Civil Appeals affirmed a judgment of the trial court in favor of appellee, based on the conclusion that appellee was an institution of purely public charity. On motion for rehearing, in view of the general importance of the decision, and because of some doubt as to its correctness, the Court of Civil Appeals certified to the Supreme Court the following question:

"Is the property of the Scottish Rite Benevolent Association, above mentioned, subject to taxation by the city of Houston, or is it exempt from such taxation under the Constitution and laws of this state?"

If we assume that the property of the association was exempt, under the statute, the question remains, Was it exempt under the Constitution? Referring to the provision of the Constitution that laws shall be null and void exempting property from taxation other than the property specifically described in section 2 of article 8, it was held, in Morris v. Masons, 68 Tex. 701, 5 S. W. 519, that—

"It is clear, therefore, that, in order to escape the charges of government, the property must appear to be embraced both within some one of the classes named in the section mentioned, and also in the exemptions actually provided in the statute made in pursuance thereof."

[1] The opinion of Judge Gaines, in Morris v. Masons, supra, made certain the meaning of the terms of the Constitution, in section 2 of article 8, that—

"The Legislature may, by general laws, exempt from taxation * * * all buildings used exclusively and owned by persons or associations of persons for school purposes * * * and all institutions * * * of purely public charity."

Such meaning is that the Legislature may, by general laws, exempt from taxation "all buildings used exclusively and owned by persons or associations of persons for school purposes," and "all buildings used exclusively and owned by institutions of purely public charity." So no building comes within the exemption authorized by the Constitution to "institutions of purely public charity" unless it is both owned and used exclusively by such an institution.

[2] No departure from the above construction of the mandate of the Constitution can be favorably considered, for it was the language of section 2 of article 8, as construed by the Supreme Court, which was carried without change into the subsequent amendment of the section. The presumption is conclusive that the people readopted the provision with knowledge of its declared intent.

During the years for which a recovery of taxes is sought, the property was owned by the Scottish Rite Benevolent Association, although subject to the rights of two Masonic organizations, named San Jacinto Lodge of Perfection, No. 6, and Houston Chapter of Rose Croix, No. 5. The charter of the association declared its purpose to be to provide relief to needy Masons, their wives, widows, mothers, and children. Any person in need came within the scope of part of the relief actually and habitually extended by the association.

The property was used exclusively by members of the Scottish Rite Benevolent Association, being used to furnish a lodge room for such members, and being also used to provide a lodge room and meeting place for San Jacinto Lodge of Perfection, No. 6, and Houston Chapter of Rose Croix, No. 5. The funds to purchase the property and to erect the improvements thereon, called the Cathedral, were provided by the above-mentioned lodge and chapter in order that they might have a permanent home. They were engaged in the work of the Masonic order, which, in the language of the agreement of counsel, is not an order "that does nothing but dispense charity, but it does dispense charity." Their entire receipts were donated to the association, less only necessary operating expenses.

The contention is vigorously stressed that the association was not an "institution of purely public charity," because those to whom it extended aid were confined in the main to the voluntary members of the Masonic order and their relatives.

[3] In our opinion, the Legislature might reasonably conclude that an institution was one of "purely public charity" where: First, it made no gain or profit; second, it accomplished ends wholly benevolent; and, third, it benefited persons, indefinite in numbers and in personalties, by preventing them, through absolute gratuity, from becoming burdens to society and to the state.

[4] Looking either to the purpose for which the Scottish Rite Benevolent Association was formed or to the philanthropies which it practiced, it seems to fulfill the requirements just specified for an institution of purely public charity. Charity need not be universal to be public. It is public when it affects all the people of a community or state, by assuming, to a material extent, that which otherwise might become the obligation or duty of the community or the state. The care of those unable to provide for themselves certainly may devolve on those of the same community or state. It is to lose sight of actual results not to see the public benefit in reasonable provision for the needs of large and indefinite groups of individuals, no matter what may have been the basis, if lawful, on which the groups were formed.

The opinions in the following cases support the conclusion that an organization doing work similar to that specified in the association's charter may be reasonably classified as an institution of purely public charity: Masonic Education & Charity Trust v. Boston, 201 Mass. 325, 87 N. E. 602; Norris v. Loomis, 215 Mass. 345, 102 N. E. 419; Minns v. Billings, 183 Mass. 129, 66 N. E. 593, 5 L. R. A. (N. S.) 686, 97 Am. St. Rep. 420; Grand Lodge v. Board of Review, 281 Ill. 483, 117 N. E. 1016; State v. Packard, 35 N. D. 298, 160 N. W. 150, L. R. A. 1917B,

710; Widows' & Orphans' Home v. Commonwealth, 126 Ky. 386, 103 S. W. 354, 16 L. R. A. (N. S.) 842; Green v. Fidelity Trust Co., 134 Ky. 311, 120 S. W. 283, 20 Ann. Cas. 863; Burd Orphan Asylum v. School District, 90 Pa. 35; Troutman v. Orphans' Home & Industrial School Assn. (Kan.) 64 Pac. 37, 5 L. R. A. (N. S.) 692; and, the able dissenting opinion in Phila. v. Masonic Home of Phila., 160 Pa. 572, 28 Atl. 954, 23 L. R. A. 548-552, 40 Am. St. Rep. 736.

We think the Legislature would have been warranted in concluding, as held by the Kentucky Court of Appeals in the case of Widows' & Orphans' Home v. Commonwealth, supra, that—

The word "purely" was meant "to describe the quality of the charity, rather than the means by which it is administered, that it should be wholly altruistic in the end to be attained, and that no private or selfish interest should be fostered under the guise of charity; but it was never meant that, because a charity was limited by its terms to objects belonging to a certain sect or fraternal order, or color, or class, it was a private, and not a public charity."

Hence, we would not declare this property without the exemption authorized by the Constitution by reason of the nature or scope of the charity which was established and maintained by the Scottish Rite Benevolent Association.

[5] But the question remains whether the property was owned and used exclusively by an institution of purely public charity. It does not satisfy the constitutional requirement that the use by others was permitted by the owner to obtain revenues to be devoted entirely to the owner's work of purely public charity. Morris v. Masons, 68 Tex. 703, 5 S. W. 519. Nor is the requirement satisfied by the fact that those sharing the use pay no rent. Red v. Johnson, 53 Tex. 288. The actual, direct use must be exclusive on the part of such an institution as is favored by the constitutional provision.

[6] By the very manner and terms of this property's acquisition, it was required to be used, as it was in fact used, by the two Masonic orders, "to enable them to pursue their work as Masonic lodges," such work being, as agreed, only partly charitable.

To the extent that the property was used by Masonic organizations, whose activities included other fields than charity, it was not, and could not be, used exclusively by an institution of purely public charity. Not being used exclusively by an institution of purely public charity, the claim to exemption under the constitutional provision fails, and our answer to the certified question is that the property was subject to taxation.