

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

November 20, 1951

Hon. Robert S. Calvert　　　　　　Opinion No. V-1351
Comptroller of Public Accounts
Austin, Texas　　　　　　　　　　Re: Exemption from inherit-
　　　　　　　　　　　　　　　　　ance taxes of bequest to
　　　　　　　　　　　　　　　　　Kerr County War Memo-
Dear Sir:　　　　　　　　　　　　rial Association.

　　　　You have requested the opinion of this office as to
whether a bequest to Kerr County War Memorial Association is
exempt from inheritance taxes by virtue of Article 7122, V.C.S.

　　　　From the file submitted with your request we have
gathered the following facts. In his last will and testament Wal-
ter Jarmon made the following provision:

　　　　"FOURTH: All the rest and residue of my prop-
　　erty and estate, whether the same be real, personal
　　or mixed, monies, notes, bonds, stocks, proceeds from
　　insurance policies, choses in action, and all other prop-
　　erty belonging to me of whatever type or description
　　it may be, I hereby give, bequeath and devise to W. G.
　　Garrett, Jr. and L. D. Garrett, as Trustees, for the
　　use and benefit of Kerr County War Memorial Associa-
　　tion, or its successors, said Association being formed
　　for the purpose of perpetuating the memory of those
　　persons who lost their lives in the service and defense
　　of the United States, and which said Trustees shall have
　　the following rights, powers and duties:

　　　　"1. To hold, manage, control, sell, execute con-
　　veyances of, dispose of, incumber, invest, reinvest
　　proceeds of, rent or lease, all or any part of my said
　　property and estate, and any amounts so received as a
　　result of the execution of said above powers, shall be
　　paid over to the said Kerr County War Memorial Asso-
　　ciation, or its successors, by my said Trustees, as in
　　their discretion they shall deem proper, such sums so
　　paid over to be used by the said Association or its suc-
　　cessors in the erection, construction, maintenance or
　　upkeep of a Memorial Building to be erected in memo-
　　ry of those persons who gave their lives in the service
　　of and defense of this Country.

"2. I do hereby empower my said Trustees, if in their discretion they deem proper, to convey and execute proper instruments of conveyance to the said Kerr County War Memorial Association or its successors, of my said property and estate, or any part of the same.

"3. The said trust herein created shall continue to exist for a period of ten years, unless sooner terminated by the said Trustees by the execution of any of the powers herein conferred. In the event such trust is not so terminated, then at the expiration of such ten year period, all of my property and estate then remaining shall pass to and vest in fee simple in the said Kerr County War Memorial Association, or its successors."

Articles II, III, and VI of the Constitution and By-laws of the Kerr County War Memorial Association read as follows:

"Article II - Object

"Section 1.
The object of this association shall be

(a) to erect, equip, maintain and operate a memorial community building to honor all those who served in World Wars.
(b) to provide opportunities in such building in Kerr County for wholesome recreation, education, civic and other leisure-time activities on a democratic community-wide basis.

"Article III - Board of Directors

"Section 1.
The management and administration of the affairs of this association shall be vested in a board of directors of 50 members who shall serve until January 1, 1946. One month previous to January 1, 1946 the President of the association shall call a meeting of the citizens of Kerr County for the purpose of electing a New Board to carry on the affairs of the association. Said board to consist of as many directors and to serve such time as shall at that time be determined.

"Article VI - Meetings

"Section 1.
There shall be an annual meeting of the citizens of Kerr County the first Monday in November. Such meeting shall be publicized through the local papers.

"Section 2.
(a) There shall be an organization meeting of the board of directors held as soon as possible after the annual meeting of members for the purpose of electing officers, appointing committees and transacting such other business as shall come before it.
. . ."

Article 7122, V.C.S., provides an exemption from inheritance taxes for "property passing to or for the use of the United States or any religious, educational or charitable organization when such bequest, devise or gift is to be used within this State."

In Attorney General's Opinion V-958 (1949), this office pointed out that the exemption allowed for charitable bequests is not limited by the requirement that property pass directly to a charitable corporation or institution, but is allowed if the property passes to or for the use of a charitable organization.

The devise and bequest made by the above quoted portions of Mr. Jarmon's will therefore passed at his death tax free if the Kerr County War Memorial Association constitutes a "charitable organization" within the meaning of Article 7122.

In general, the distinctive features of a charitable organization are that it has no capital stock and no provision for making dividends or profits, but derives its funds mainly from public and private charity and holds them in trust for the objects expressed in the instrument creating the organization;[1] and the

---

[1] In construing the exemption from ad valorem taxation allowed institutions of purely public charity, our Supreme Court made the following statement:
"In our opinion, the Legislature might reasonably conclude that an institution was one of 'purely public charity' where: First, it made no gain or profit; second, it accomplished ends wholly benevolent; and third, it benefited persons, indefinite in numbers and in personalities, by preventing them, through absolute gratuity, from becoming burdens to society and to the state.
" . . . Charity need not be universal to be public. It is public when it affects all the people of a community or state, by assuming, to a material extent, that which otherwise might become the obligation or duty of the community or the state." City of Houston v. Scottish Rite Benev. Assoc., 111 Tex. 191, 230 S.W. 978, 981 (1921).

Hon. Robert S. Calvert, Page 4 (V-1351)

test is whether the organization exists to carry out a purpose recognized in law as charitable or is maintained for gain, profit, or private advantage. People ex rel. Hellyer v. Morton, 373 Ill. 72, 25 N.E.2d 504, 506 (1940); Congregational Sunday School & Publishing Society v. Board of Review, 290 Ill. 108, 125 N.E. 7, 9 (1919).

In Boyd v. Frost National Bank, 145 Tex. 206, 196 S.W.2d 497 (1946), the court discusses charitable purposes. We quote the following excerpt from page 501 of the opinion:

" . . . The authorities leave no doubt that the words 'charitable purposes' have a fixed meaning in law and that a judicial determination may be made with satisfactory certainty in every case where the question of whether a given purpose is or is not charitable arises. Chapter 4 of the statutes of 43 Elizabeth, enacted in 1601, known as the Statute of Charitable Uses, although not adopted in Texas, 'is regarded by many authorities as the principal test and evidence of what the law will consider charitable uses,' and the enumeration of those uses as set out in the preamble to the act was accepted as authoritative in Powers v. First National Bank of Corsicana, 138 Tex. 604, 161 S.W.2d 273.

"Illuminative in this regard is the following quotation from Zollman's American Law of Charities, §187, p. 123: 'It must never be forgotten that the words "charity" and "charitable" are technical terms. Since the statute of Elizabeth, they have had a technical meaning both in England and America, including even those states in which the statute has been repealed or has not been re-enacted or adopted. "They are lifted from their popular and lexicographical meaning. In them survives a history from which they have derived a special significance. They condense volumes of controversy and decision into a phrase which must be now read by the growing light under which it has been developed." '

"And the following excellent definition of 'charity' and 'a charitable use' is evolved in 2 Perry, Trusts and Trustees, 7th ed., § 697, p. 1182: 'It will be seen that the words "charity" and "a charitable use" have a somewhat technical meaning in the law. * * * The word "charity" in its widest sense, denotes all the good affections men ought to bear toward each other; in a more restricted sense, it means relief or alms to the poor; but in a court of chancery the signification of the

word is derived from the statute of Elizabeth, [and a public charity need have no special reference to the poor.] Hence it has been said that those purposes are considered charitable which are enumerated in the statute, or which by analogy are deemed within its spirit or intendment. Another short but practical definition has described it as "a gift to a general public use, which extends to the poor as well as the rich." But Mr. Justice Gray has given a definition which includes all the facts and circumstances, and all varieties of charity under the law, and leaves nothing to be desired. In his words, a charity in a legal sense may be more fully defined as a gift to be applied, consistently with existing laws, for the benefit of an indefinite number of persons,--either by bringing their hearts under the influence of education or religion, by relieving their bodies from disease, suffering, or constraint, by assisting them to establish themselves for life, or by erecting or maintaining public buildings or works, or otherwise lessening the burdens of government." '

"Current legal concepts of what are charitable purposes are well gathered into the following classification in II Restatement, Trusts, § 368, p. 1140:

" 'Charitable purposes include

    (a)  the relief of poverty;
    (b)  the advancement of education;
    (c)  the advancement of religion;
    (d)  the promotion of health;
    (e)  governmental or municipal purposes;
    (f)  other purposes the accomplishment of which is beneficial to the community.'

"Other guides which will satisfactorily conduct the inquirer to an answer of the question, what are charitable purposes, are 2 Bogert, Trusts and Trustees, §361 et seq.; Zollman, American Law of Charities, sec. 184 et seq.; 14 C.J.S., Charities, § 1 et seq., p. 410 et seq.; 10 Am. Jur., Charities, p. 584 et seq."

The following testamentary gifts have been held exempt from death taxes as passing for charitable or public purposes or to charitable institutions: a gift for the support of a symphony orchestra, State v. Central Trust Co., 17 Ohio App. 423 (1923); a bequest to Shakespeare Memorial Theatre organized to keep alive Shakespeare's memory by the production and presentation of plays

and also to assist poor members of the theatrical profession, In re Hackett's Estate, 234 N.Y.S. 299 (1929); a bequest for the use of a farm foundation which was established to encourage community effort and to improve rural life, People v. First Nat. Bank, 364 Ill. 262, 4 N.E.2d 378 (1936); a bequest to an incorporated memorial, the purposes of which were to bring about the civic betterment of the residents of the United States and preferably of those residing in the State of Ohio, Tax Commission v. Livingood, 40 Ohio App. 543, 178 N.E. 707 (1931); a gift to the inhabitants of a town for the construction and maintenance of a town hall, In re Clark, 131 Me. 105, 159 Atl. 500 (1932).

Cases recognizing as charitable trusts for the commemoration, maintenance, or preservation of particular events or objects, monuments, memorials, and shrines are discussed in 12 A.L.R. 2d 888-893.

In view of the foregoing authorities, as the purposes or objects of the Kerr County War Memorial Association previously quoted are clearly charitable, we conclude that it is a "charitable organization" within the meaning of Article 7122. Since the further statutory requirement that the bequest or devise must be used within the State is also met, the property which passed under the fourth clause of Mr. Jarmon's will passed tax free.

## SUMMARY

The Kerr County War Memorial Association, organized for the purpose of erecting and maintaining a memorial community building honoring all who served in World Wars, is a "charitable organization" within the meaning of Article 7122, V.C.S. Since the requirement of Article 7122 that the bequest or devise must be used within the State is also met, no inheritance taxes are due on property which passed by will to trustees for the use of the Association.

APPROVED:

W. V. Geppert
Taxation Division

Everett Hutchinson
Executive Assistant

Charles D. Mathews
First Assistant

MMC/mwb

Yours very truly,

PRICE DANIEL
Attorney General

By Marietta McGregor Creel

Mrs. Marietta McGregor Creel
Assistant