### LITTLE THEATRE OF DALLAS, Inc., v. CITY OF DALLAS.

#### No. 12548.

Court of Civil Appeals of Texas. Dallas.

Jan. 20, 1939.

Malone, Lipscomb, White & Seay, of Dallas, for appellant.

H. P. Kucera, City Atty., and A. J. Thuss, W. M. Taylor, Jr., and J. Manuel Hoppenstein, Asst. City Attys., all of Dallas, for appellee.

LOONEY, Justice.

The City of Dallas sued the Little Theatre of Dallas, Inc., to recover ad valorem taxes assessed against its property. Appellant defended on the ground that the property was devoted exclusively to the purposes of a school or educational institution and society of fine arts, therefore was exempt from taxes under the Constitution and statutes of the State. From a judgment in favor of the City, the Little Theatre appealed.

The corporate purpose of appellant is expressed in its charter, as follows: " * * the promotion and support of any literary and scientific undertaking; the operation and maintenance of a library and theatre and the promotion of painting, music and other fine arts; and especially for the promotion and support of dramatic expression as a fine art, and of amateur dramatic expression, and for educational purposes looking thereto". Its charter also provides that, the stock of the corporation shall have no face value and that dividends shall never be paid thereon.

The property owned by the corporation was paid for with cash donations by various public spirited citizens (to whom shares, of the nature just named, were issued) and money borrowed on mortgages, and consisted of a lot 150 x 200 ft in size, in block 945, on Maple and Carlisle Streets in the City of Dallas, upon which was erected a building 150 ft in length by about 60 ft in width, two stories high, except the auditorium, which takes up the major portion of the square footage of the building, with a seating capacity of about 500, designed primarily for exhibitions or theatrical programs; and other than the auditorium, the building had dressing rooms, a storeroom for costumes, and a sound recording room.

The operation of the theatre is financed by membership fees (membership being open to the public), there being about 3,800, a majority of whom pay $3 per year dues; about 75, known as patron members, pay $25 per year, and 35 or 40, several years ago, paid $250 for life membership. Regular members are entitled to one seat at each performance, lecture, special event, etc., for each three-dollar membership purchased (the member being privileged to own one or more memberships); patron members are entitled to four seats at each performance, and life members to two seats. About twice each month, the theatre hires out its auditorium for lectures, musical recitals, etc.; if given for charity, a rental sufficient to cover the cost of lights, heat, etc., is charged, but where a charge is made for admission, an additional rental of $10 is added. Any reputable person may hire the auditorium, where such use does not interfere with the program of the theatre. The theatre trains and coaches amateur actors in the same manner as dramatic schools, colleges and universities, and maintains classes for instruction in the various branches of dramaturgy. Southern Methodist University students who receive the instruction, are granted credits by the University toward academic degrees. The theatre maintains a regular school where students are given instruction in diction, acting, play writing, fencing, use of voice, dancing, stage designing, etc. Southern Methodist University students taking the course afforded by the theatre, pay tuition to the University, of which the theatre receives ten per cent; and the annual tuition charged students attending the full time school, is $100; the instructors being paid on a commission basis. Classes are held in the lounge room of the theatre, on its stage, etc. All monies collected by the theatre from whatever source are expended for the accomplishment of the purposes for which the corporation was chartered. It has never made a profit; no one connected with it is paid a salary, except the director, executive secretary and janitor, each of whom being a full time employe. It gives six regular productions per annum, each running eight nights, besides various student productions, and about twice each month its auditorium is hired for lectures, musical entertainments, etc.

■ The foregoing (which includes the purposes for which the theatre was incorporated and substantially its activities), presents for our decision the question, whether or not, under the provisions of the Constitution (Sec. 2, Art. 8, Vernon's Ann.St.) and the statute enacted in pursuance thereof (Subdiv. 1 of Art. 7150), the property involved was owned and used exclusively for school purposes. The burden of proof to establish that issue is upon the appellant.

The Constitution does not create the exemption but simply provides that, the Legislature, by a general law, may "exempt from taxation * * * all such buildings used exclusively and owned by persons or associations of persons for school purposes [etc.] * * *". Pursuant to this authority, the Legislature provided that "public school houses * * * and the grounds attached to such buildings necessary for the proper occupancy, use and enjoyment of the same, and not leased or otherwise used with a view to profit. * * All public colleges, public academies, all buildings connected with the same, and all

lands immediately connected with public institutions of learning, * * * " shall be exempt from taxation.

 Unlike the more liberal rule, applied in other states, in construing tax exemption provisions of constitutions and statutes, our courts subject them to a strict construction, holding that, in order to come within the exemption, it must be shown that (in the language of the Constitution and statute) the property is both owned and used exclusively for the purpose for which the exemption is given. In Red v. Johnson, 53 Tex. 284, the Supreme Court held that a school house used and occupied as a boarding school, but in which the owner resided with his family, was not exempt from taxation. In the course of the opinion, Judge Gould said: "The buildings in question were used by the owner and family not only for school purposes, but also as a residence. It is not enough that the main use of the building was as a school, nor that the owner and family were all engaged·in the school as teachers or pupils. A building used by the owner as a family residence is not one used exclusively for school purposes, and therefore is not one exempted by the constitution. St. Mary's College v. Crowl, 10 Kan. [442] 451, 452."

█ The same Article and Section of the Constitution (Art. 8, § 2) also authorized the Legislature to exempt from taxation "institutions of purely public charity". A number of cases arising under that provision have been adjudicated by our Supreme Court, in which the rule of strict construction was applied; the court holding that, where the property claimed to be exempt was used for any purpose other than for public charity, it was taxable. In Morris v. Lone Star Chapter, 68 Tex. 698, 703, 5 S.W. 519, the Supreme Court, in an opinion by Judge Gaines, held that the provision in Const.Tex. Art. 8, § 2, that the legislature may exempt from taxation, among others, the buildings of institutions of purely public charity, means such buildings only as are used exclusively and owned by such institutions. Hence a hall owned by a chapter of Royal Arch Masons, certain portions of which are rented to persons and for purposes unconnected with the objects of the society, and the proceeds used by the society in furtherance of its charitable objects, is not a building used exclusively by it, and is subject to taxation. The same doctrine

was announced by the Supreme Court in City of Houston v. Scottish Rite Benev. Ass'n, 111 Tex. 191, 230 S.W. 978, 979, 980. The agreed statement of facts showed that the Association dispensed charity among its other activities; but that this property was not exempt from taxation. Speaking through Judge Greenwood, the court said: "Such meaning is that·the Legislature may, by general laws, exempt from taxation 'all buildings used exclusively and owned by persons or associations of persons for school purposes,' and 'all buildings used exclusively· and owned by institutions of purely public charity.' So no building comes within the exemption authorized by the Constitution to 'institutions of purely public charity' unless it is both owned and used exclusively by such an institution * * * But the question remains whether the property was owned and used exclusively by an institution of purely public charity. It does not satisfy the constitutional requirement that the use by others was permitted by the owner to obtain revenues· to be devoted entirely to the owner's work of purely public charity. Morris v. Masons, 68 Tex. [698] 703, 5 S.W. 519. Nor is the requirement satisfied by the fact that those sharing the use pay no rent. Red v. Johnson, 53 Tex. [284] 288. The actual, direct use must be exclusive on the part of such an institution as is favored by the constitutional provision." To the same effect, see Masonic Temple Ass'n v. Amarillo Independent School Dist., Tex.Civ.App., 14 S. W.2d 128, 129, writ refused; Benevolent & Protective Order of Elks v. City of Houston, Tex.Civ.App., 44 S.W.2d 488, writ refused.

The undisputed facts, in our opinion, show that appellant's primary purpose is to furnish pleasure and entertainment to its members and patrons; although it gave instruction in diction, acting, play writing, fencing, the use of voice, dancing, etc., yet, however laudable and, in a general sense, educational and cultural these activities, they fall far short of showing that the property in question was used exclusively for school purposes.

Appellant cites a number of decisions from the courts of other states, tending to show that theatres, libraries, art galleries, debating clubs, laundry run for profit in connection with a school, gymnasium and recreational grounds, labor temple, woman's club, professors' houses,

dormitories and music association were exempt from taxation, but these decisions were based upon and controlled by constitutional and statutory provisions peculiar to the respective states, hence are not controlling as authorities here.

Finding no reversible error in the record, the judgment of the trial court is affirmed.

Affirmed.