THE PEOPLE OF THE STATE OF NEW YORK ex rel. ALVIN UNTER-MYER et al., as Executors of and Trustees under the Will of SAMUEL UNTERMYER, Deceased, et al., Appellants, against ARTHUR J. McGREGOR, as Acting Commissioner of Assessment and Taxation of the City of Yonkers, Respondent. (1942 Assessment.)

THE PEOPLE OF THE STATE OF NEW YORK ex rel. SAMUEL UNTERMYER PARK & GARDENS, Appellant, against ARTHUR J. McGREGOR, as Acting Commissioner of Assessment and Taxation of the City of Yonkers, Respondent. (1943 Assessment.)

Argued December 7, 1945; decided March 7, 1946.

238

William F. Bleakley, Mitchell Salem Fisher, David Gorfinkel and *Ulysses S. Adler* for appellants. I. The certificate of incorporation, especially when read in the light of the circumstances preceding and surrounding the organization of Samuel Untermyer Park & Gardens, demonstrates that the " horticultural purposes " are purposes ancillary to the use and enjoyment of the public park and gardens. (*Matter of De Peyster,* 210 N. Y. 216; *Williams* v. *Gallatin,* 229 N. Y. 248; *National Navy Club of N. Y., Inc.,* v. *City of New York,* 122 Misc. 89; *People ex rel. Trustees of Masonic Hall* v. *Farrell,* 130 Misc. 142; *Matter of Buffalo Turn Verein* v. *Reuling,* 155 Misc. 797; *Matter of Frasch,* 245 N. Y. 174; *Association for Colored Orphans* v. *Mayor,* 104 N. Y. 581; *Webster Apartments* v. *City of New York,* 118 Misc. 91, 206 App. Div. 749; *Matter of Corporation of Yaddo,* 216 App. Div. 1; *Roche's Beach, Inc.,* v. *Commissioner of Internal Revenue,* 96 F. 2d 776; *Leubuscher* v. *Commissioner of Internal Revenue,* 54 F. 2d 998.) II. The theory of Special Term that the Untermyer trustees held the property on the 1942 assessment date is erroneous. The property was entitled to tax exemption. (*Matter of Graves,* 171 N. Y. 40; *Matter of Saunders,* 77 Misc. 54, 156 App. Div. 891, 211 N. Y. 541; *Matter of Juilliard,* 238 N. Y. 499; *Matter*

*of Fletcher,* 166 Misc. 486, 255 App. Div. 843; *Matter of Graves,* 171 N. Y. 40; *People ex rel. Crook* v. *Wells,* 179 N. Y. 257; *People ex rel. Andrews* v. *Cameron,* 140 App. Div. 76, 200 N. Y. 585; *Matter of Le Fevre,* 233 N. Y. 138.) III. Since the four parcels west of Warburton Avenue are an integral part of the public park and gardens, relators were entitled to exemption of these parcels. (*Matter of Central Parkway,* 140 Misc. 727; *People ex rel. Outer Court, Inc.,* v. *Miller,* 161 Misc. 603, 256 App. Div. 814, 280 N. Y. 825; *Matter of Mary Immaculate School,* 188 App. Div. 5; *Congregation Emanu-El of New York* v. *City of New York,* 150 Misc. 657, 243 App. Div. 692.)

*John J. Broderick, Corporation Counsel,* for respondent. I. The Tax Law (§ 4, as amd.) does not exempt the subject property from taxation for the years 1942 and 1943. (*People ex rel. Andrews* v. *Cameron,* 140 App. Div. 76, 200 N. Y. 585; *Matter of Schwartzman,* 262 App. Div. 635; *People ex rel. N. Y. Lodge No. 1, B.P.O.E.* v. *Purdy,* 179 App. Div. 805, 224 N. Y. 710; *Matter of Board of Education of City of Jamestown* v. *Baker,* 241 App. Div. 574, 266 N. Y. 636; *Matter of Beekman,* 232 N. Y. 365.) II. Relators have failed to show lots west of Warburton Avenue are exempt. (*Bd. of Foreign Missions* v. *Bd. of Assessors,* 244 N. Y. 42.)

DYE, J. Samuel Untermyer died March 16, 1940, leaving a last will and testament by which he attempted to give "Greystone," his country estate located on the Hudson River at Yonkers, Westchester County, N. Y., to the State of New York for use as a public park. We quote the pertinent provision of the will: "Eighth: Having heretofore, on May 20, 1938, purchased from Alvin Untermyer and Irwin Untermyer, as Trustees under Trust Agreement dated September 24, 1917 and Supplemental Agreement dated May 25, 1921, the Estate known as 'Greystone' located at Yonkers in the State of New York, and being now the owner thereof, I hereby bequeath to the State of New York, absolutely and in perpetuity, as and for a public park and gardens, to be known as 'Samuel Untermyer Park and Gardens', all that portion of said estate situate and lying west of Broadway (otherwise known as 'Albany Post Road') together with all buildings, structures and improvements thereon, and including, but without limiting the fore-

going, all lands and water-grants located or lying west of the Aqueduct or Warburton Avenue; provided, however, that either the State of New York or the appropriate authority thereof shall, within six months after my decease, agree in writing with my Executors to accept said property for the purpose aforesaid. There is not to be included in this bequest any part of the contents of the Mansion (most of which is and for the past twelve years or more has been the property of my children), or any stained-glass windows or furnishings in the Mansion or any personal property or statuary except such as, in the opinion of my Executors, forms an integral part of the buildings, structures and improvements on the property bequeathed.

" There is now constructed on the property bequeathed an open-air theatre and walled-garden, known as the ' Greek Gardens ', that is now and has been for many years devoted to exhibitions of flowers and flowering plants, similar to those that have for generations characterized the exhibitions at Hampton Court Gardens in England. It is my hope (though not a condition of the foregoing bequest) that the State of New York or the appropriate authority thereof will, in connection with the acceptance by it of the bequest, arrange for the perpetuation of these exhibitions and for the maintenance of the property in a condition generally similar to that in which it has been maintained by me.

" In that connection I suggest and recommend, though not in any sense as a condition of the foregoing bequest, that if at the time of my death my present superintendent, Mr. George H. Chisholm, is in my employ, he be retained by the State of New York or the appropriate authority thereof in a position similar to that he now occupies, because of his long and exceptional knowledge of and experience with plant life in various parts of the world and his tried integrity and capacity to maintain and improve the property bequeathed, as a park and gardens.''

The State renounced the gift. The executors and trustees thereupon petitioned the Surrogate of New York County to determine whether the cy pres doctrine was applicable to the charitable and public purpose expressed by the testator. The Surrogate held the principles of the cy pres doctrine applicable to the gift of " Greystone " and a decree so construing the will

was entered April 24, 1941. Conformably with the decree, the executors, pursuant to the Membership Corporations Law and with the approval of the Surrogate and the Supreme Court, duly organized a non-profit membership corporation entitled "Samuel Untermyer Park & Gardens," a charitable membership corporation, for the purpose of carrying out the charitable and public purposes of the bequest of "Greystone."

On March 26, 1942, the executors and trustees transferred the fee of "Greystone" to the newly organized charitable corporation by deed containing a recital that it was pursuant to article Eighth of the said last will and testament as construed by the cy pres decree of April 24, 1941.

The refusal of the taxing authorities of the city of Yonkers to exempt the premises from taxation has given rise to these certiorari proceedings to review the tax assessments as levied. Proceeding No. 1 was brought by the executors and trustees to review the assessment for the year 1942 which covers the period while the executors and trustees held title from the date of the entry of the cy pres decree, April 24, 1941, to the date Greystone was transferred to the charitable membership corporation, March 26, 1942. Proceeding No. 2 was brought by the corporation to review the assessment for the year 1943 which is for the period subsequent to the transfer. The proceedings were consolidated and referred to an official referee for hearing and report, who found that sufficient public use as a public park and playground had been established to justify exemption of the property from taxation. The Special Term refused to follow the recommendation and such refusal has been affirmed by the Appellate Division on the theory that under the provisions of the Certificate of Incorporation the Samuel Untermyer Park & Gardens Membership Corporation is not so exclusively devoted to charitable and public uses as to justify exemption within the meaning of subdivision 6 of section 4 of the Tax Law. The pertinent provision of the certificate of incorporation is " * * * and to develop, improve, maintain and operate such land as and for a public park and gardens, and, if and to the extent so determined by its directors from time to time, as and for a public playground and/or for horticultural purposes * * *."

The lower courts have construed these words to mean that the trustees of the corporation may devote the property to charitable public use or, in the alternative, horticultural purposes independent of public use and solely for the exclusive and private use and enjoyment of the members of the corporation. It should be said that no such intention is imputed to the corporate trustees but that the decision is based solely on the language as used in the certificate. From the entry of the cy pres decree of April 24, 1941, until March 26, 1942, when the property was transferred to the corporation, and continuously thereafter, " Greystone " has been used as a public park and garden and for no other purpose. It has been patronized by thousands of visitors, the daily attendance fluctuating with the season and the attractiveness and variety of the floral and horticultural displays.

The cy pres decree is not questioned on this appeal; it is a collateral matter which need not concern us here. Our task is limited to the specific question of whether the membership corporation, Samuel Untermyer Park & Gardens, is exempt from taxation. The issue is clear-cut and hinges on the force and effect of the meaning of the words in the certificate " * * * and/or for horticultural purposes".

When words are lifted from their context there is always danger that the intended meaning may be distorted if not actually destroyed. This is no exception but rather illustrates the danger of such a practice. The only safe way to avoid such a pitfall is to read the context as a whole.

The incorporation of the Samuel Untermyer Park & Gardens was for the primary and sole purpose of receiving the record title to " Greystone " and to hold it for the purpose and intent as expressed by Samuel Untermyer in article Eighth of his last will and testament and which has been construed to be within the principles of the cy pres doctrine. This, no one challenges. The public and charitable purpose is expressed in clear and understandable language; the park-like grounds are made available to the public for their use and enjoyment affording not only means for physical activity and relaxation but also aesthetic pleasure and inspiration for those less actively inclined who come to enjoy the beautiful floral and horticultural displays. To assure a successful accomplishment of this beneficent pur-

pose a certain discretion was left with the trustees to determine the apportionment of the available lands between playgrounds and gardens. Nowhere is it said that the horticultural purpose is to be co-ordinate or equal. It is rather an embellishment or adjunct to the successful maintenance and development of the whole project as a place of healthy and cultural enjoyment. The test as to what is and what is not an exempt charitable corporation may be gathered from the statute under which it is incorporated (*Matter of De Peyster,* 210 N. Y. 216); or, when the act of incorporation is silent, from its constitution and by-laws (*Assn. for Colored Orphans* v. *Mayor,* 104 N. Y. 581) and a similar rule applies to charitable corporations created pursuant to a will (*Webster Apartments* v. *City of New York,* 118 Misc. 91, affd. 206 App. Div. 749). A careful reading of the certificate of incorporation in this case clearly indicates that it serves to implement the purposes and intent of the testator as expressed in article Eighth of his last will and testament and the cy pres decree, both of which are referred to therein, and when we take into consideration the exclusive public use to which the executors and trustees, during their interim ownership, and the trustees of the corporation have devoted the property, it seems clear and indisputable that it is exempt from taxation under subdivision 6 of section 4 of the Tax Law.

We also hold that the exemption extends to the assessment for the year 1942 when the property was in the hands of the executors between the cy pres decree of April 24, 1941, and the transfer to the corporation, March 26, 1942 (*Matter of Le Fevre,* 233 N. Y. 138; *People ex rel. Crook* v. *Wells,* 179 N. Y. 257; *Matter of Graves,* 171 N. Y. 40).

There is one further question involved and that is whether the property west of Warburton Avenue should also be exempt. Part of it is under water and inaccessible to the public for playground use. From the record it appears that the property affords a view of the Hudson River beyond Tappan Zee north and south to the George Washington Bridge which might and could be destroyed if the property were sold and buildings erected. We feel that it should be treated as an integral part of the park and while so used, exempt from taxation.

In each proceeding, the orders should be reversed, with costs in all courts to the appellants, and the matter remitted to the

Special Term for further proceedings not inconsistent with this opinion.

Lewis, Conway, Thacher and Medalie, JJ., concur; Loughran, Ch. J., and Desmond, J., dissent upon the ground that the corporation " Samuel Untermyer Park & Gardens " was not organized exclusively for one or more of the purposes specified in subdivision 6 of section 4 of the Tax Law and its land is not used exclusively for carrying out thereon one or more of such purposes. It is used for " horticultural purposes " — purposes not exempted from taxation under the statute.

Ordered accordingly. (See 295 N. Y. 893.)