

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

April 8, 1947

Hon. George H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Opinion No. V-123

Re: Possible exemptions from
ad valorem taxes of prop-
erties belonging to The
Fair Foundation.

Dear Sir:

You have requested an opinion from this department as
to whether or not the properties belonging to The Fair Foundation
are exempt from ad valorem taxes.

The copy of the trust indenture which you enclosed with
your request discloses the following facts.

\* \* \* \* \* \*

In November, 1937, Robert Walter Fair and wife, Mattie
Fair, settlers, desiring to create a charitable trust and charitable
foundation, to be known as The Fair Foundation, "for general chari-
table purposes, including (1) relief of poverty and distress; (2) ad-
vancement of religion; and (3) advancement of education and sci-
ence" conveyed, assigned, set over and delivered to Robert Walter
Fair and Mattie Fair, Trustees of "The Fair Foundation," their
successors and assigns, all their right, title and interest in and to
the property described in Schedule A which was made a part of the
trust indenture, attached thereto, headed "Exhibit A," and which
reads as follows:

"Property transferred by us to The Fair Foun-
dation upon signature:

"1. Cash - Two Thousand Dollars
($2,000.00).

"2. One Hundred (100) milligrams
of Radium, now under the super-
vision of Dr. Minnie L. Maffett
and being used at present for
poor and charity patients in
Parkland Hospital at Dallas,
Texas. Said Radium shall al-
ways be used for the benefit

> of charity patients and absolutely
> without profit to anyone.
>
> (Signed) R. W. Fair."

The trustees are to have absolute power of disposal of this property (both principal and income), and of such other property as might later be added by the settlers or by third parties for any of the charitable purposes previously enumerated subject to certain limitations, viz.: no contributions are to be made to individual persons; "no contributions or investment shall be made for such purposes /previously enumerated/ or either of them except through an accredited organization or institution existing at the time of such contribution, gift or conveyance, or to one of such institutions as may be created by the Trustees for such charitable purposes or either of them, it being their /the settlers/ intention to leave absolutely in the discretion of the Trustees the manner, form and terms of any gift or contributions so long as same shall be made through well recognized and established institutions or agencies." (Emphasis added)

Gifts made by third parties are "subject to the terms and conditions of this trust and also subject to all rules and regulations established by the Trustees hereunder."

The various other details of the trust, which is expressly declared to be irrevocable, have no bearing on the question of whether or not the properties belonging to The Fair Foundation are exempt from ad valorem taxes.

So far as appears from "Exhibit A" the only property belonging to The Fair Foundation is personal property; however, in order to settle all aspects of this question it will be assumed that The Fair Foundation has acquired real property interests since the creation of the trust.

\* \* \* \* \*

Article VIII, Section 2 of the Constitution of the State of Texas provides that the Legislature may exempt certain classes of property from taxation. This constitutional provision is the fountainhead of all exemptions, for it expressly declares that "all laws exempting properties from taxation other than the property above mentioned shall be null and void;" but even though these exemptions "cannot be enlarged \* \* \* either by the Legislature or by the Courts," (City of Wichita Falls v. Cooper, Civ. App., 170 S. W. (2d) 777, error refused), it is the legislative enactment, Article 7150, R.C.S., which actually creates exemptions from taxation. The constitutional provision is not self enacting but merely provides the limits of legislative

exemption. St. Edwards' College v. Morris, 17 S. W. 512, 82 T. 1;
Little Theatre of Dallas, Inc. v. City of Dallas, 124 S. W. (2d) 863.
Therefore whether or not properties belonging to The Fair Foun-
dation are exempt from taxation must be determined by examining
the relevant exemptions stated in parts of Section 1 and in Section
7 of Art. 7150 as construed by court decisions. The other sections
of Art. 7150 are inapplicable.

The relevant parts of Section 1 are as follows:

"* * * and all endowment funds of institutions of
learning and religion not used with a view to profit,
and when the same are invested in bonds or mort-
gages, and all such buildings used exclusively and
owned by persons or associations of persons for school
purposes; provided that when the land or other prop-
erty has been, or shall hereafter be, bought in by such
institutions under foreclosure sales made to satisfy or
protect bonds or mortgages in which said endowment
funds are invested, that such exemption of such land
and property shall continue for two years after the
purchase of the same at such sale by such institutions
and no longer. This provision shall not extend to the
leasehold estates of real property held under authority
of any college or university of learning."

Section 7 reads as follows:

"Public charities. - All buildings belonging to in-
stitutions of purely public charity, together with the
lands belonging to and occupied by such institutions
not leased or otherwise used with a view to profit, un-
less such rents and profits and all moneys and credits
are appropriated by such institutions solely to sustain
such institutions and for the benefit of the sick and
disabled members and their families and the burial of
the same, or for the maintenance of persons when un-
able to provide for themselves, whether such persons
are members of such institutions or not. An institu-
tion of purely public charity under this article is one
which dispenses its aid to its members and others in
sickness or distress, or at death, without regard to
poverty or riches of the recipient, also when the funds,
property and assets of such institutions are placed and
bound by its laws to relieve, aid and administer in any
way to the relief of its members when in want, sick-
ness and distress, and provide homes for its helpless
and dependent members and to educate and maintain
the orphans of its deceased members or other persons."

It is noteworthy that although the trust is termed a "charitable" trust and the various purposes for which it was created are referred to as "general charitable purposes," two of these purposes, advancement of religion and advancement of education and/or science, might well be covered by the quoted portion of Section 1 particularly in view of the fact that the trustees are expressly given authority to establish institutions for any of the purposes for which the trust was created. If such action has been taken by the trustees, it is true that the personal property which constitutes the endowment fund of institutions of learning and religion and which is not used for "profit" in the sense of private gain is exempt from taxation; and such exemption is accorded to all personalty so held -- not just to "bonds and mortgages." Harris, et al v. City of Fort Worth, et al, 180 S.W. (2d) 131; but where such property merely may be used for endowment purposes clearly the statutory exemption is not gained. Obviously the fact that the trustees might make a gift (see underlined portion quoted as to trustees' powers to make contributions, etc.) from the trust estate to established institutions of learning and religion could not result in gaining an exemption until such gifts were actually made. It is noteworthy in connection with possible exemptions under this Section that the Harris case, supra, construed the clause in Section 1 of Article 7150 which limits to two years exemption of land bought in under foreclosure sale to negative the exemption of real estate generally even though a part of an endowment fund. Of course it is well settled that the buildings and lands which are owned by persons or associations of persons for school purposes and which are used exclusively for school purposes, i.e. in the actual operation of the school, such as yards and recreational grounds, are exempt from taxation. Red. v. Johnson, 53 Tex. 284; Cassiano v. Ursuline Academy, 64 Tex. 673; St. Edward's College v. Morris, supra; Little Theatre of Dallas, Inc. v. City of Dallas, supra.

To summarize: It would appear that no personal property belonging to The Fair Foundation is entitled to exemption from ad valorem taxes under the provisions of Section 1, Article 7150, Revised Civil Statutes, which exempts from taxation the endowment funds of institutions of learning and religion not used with a view to profit, for the reason that it does not appear that The Fair Foundation has yet established any such institution of learning and religion. If in fact such an institution has been established by The Fair Foundation, then, under the holding of the Harris case, supra, all the personal property which constitutes the endowment of the institution and which is not used for "profit" in the sense of private gain is exempt from taxation; however, no real property comprising a part of the endowment fund is exempt from taxation save such as is bought in to protect bonds, mortgages, etc. and that only for a period of two years. The buildings

and lands which are owned by an institution of learning and which are used exclusively for school purposes are exempt from taxation.

Turning next to a consideration of the exemption which is granted by Section 7 of Article 7150, it is noteworthy that it may be claimed by "institutions of purely public charity." Justice Greenwood in the case of City of Houston v. Scottish Rite Benev. Ass'n., 111 Tex. 191, 230 S. W. 978, said that 'an institution was one of purely public charity' where: First, it made no gain or profit; second, it accomplished ends wholly benevolent; and third, it benefited persons, indefinite in numbers and in personalities, by preventing them, through absolute gratuity, from becoming burdens to society and to the state." The purposes of The Fair Foundation are in accord with these requirements, and it will be assumed that there has been in fact no departure from these purposes.

Having decided that The Fair Foundation is an "institution of purely public charity," the remaining question as to the scope of the exemption accorded it by virtue of Section 7 is excellently discussed in the early case of Morris v. Lone Star Chapter, No. 6, Royal Arch Masons, 68 Tex. 697, 5 S. W. 519, in which Judge Gaines construed the then existing constitutional provisions in the following way:

> "The word 'institution' properly means an association organized or established for some specific purpose, (see the word in Webster's dictionary) though it is sometimes used in statutes and in common parlance in the sense of the building or establishment in which the business of such a society is carried on * * *. Hence that part of the section under consideration which contains this word may have been intended to read, either 'all buildings used exclusively and owned by persons or associations of persons for school purposes, * * * and all institutions /meaning establishments with houses, grounds, etc./ of purely public charity,' or 'all buildings used exclusively and owned by persons or associations of persons for school purposes, * * * and all buildings used exclusively and owned by institutions of purely public charity.' * * * We are of the opinion that the latter reading gives the more reasonable construction of the language as used in the constitution of our state. This * * * is in accord with the spirit of the other provisions contained in the section. The legislature is empowered to exempt only 'actual places' of religious worship, and actual burial grounds not held for profit, and, for school purposes, merely the buildings (including the grounds on which they are

situate) and the necessary furniture. In neither
case is property which is not actually used.as a
place of worship or burial, or for a school house,
exempt, although it may be used for the support
of religion or education, or to secure the decent
burial of the dead. If it had been intended to ex-
empt all the property of charitable institutions, it
would seem that more general terms would have
been used. Besides, the omission of the word 'all'
before the word 'institutions' would indicate that
the former construction was not intended, it was
used before the word 'buildings' and the word
'schools' in the same sentence, when the mean-
ing in both instances would have been clear with-
out it. It would seem, therefore, to have been
omitted before the word 'institutions' because its
insertion there would have changed the meaning
which was intended to be conveyed."

Judge Gaines next decided that the property in contro-
versy was embraced within that designation, or within the de-
scription contained in subdivision 6, Article 4673, Revised
Statutes, which section he construed and applied to the facts
of that case. He then concluded: "the building in question is
not 'used exclusively' by appellee in the sense given to these
words in the Constitution; the exclusive use meant being the
actual and direct use for the purposes of the association, and
not a use by others for revenue, although that revenue may be
exclusively appropriated for the objects of the charity. The
legislature in exercising the power conferred by the constitu-
tion seems to follow the construction we have adopted and ex-
empt 'all buildings belonging to institutions of purely public
charity, together with the lands belonging to and occupied by
such institutions, not leased or otherwise used with a view to
profit, and all moneys and credits appropriated solely to sus-
taining such institutions.' This means that a building leased
for profit is not exempt although such profit may be appropri-
ated solely for the purposes of the charity, and not to the pri-
vate gain of its promoters or stockholders. The other provi-
sions in the same article show this; * * *. This position is
also sustained by the analogy of the section, which exempts
the property of counties, cities, and towns. The exemption is
limited to their property owned and held only for public pur-
poses, such as public buildings and sites therefor. Const.
Art. XI, § 8 * * *. Many of the states have statutes of simi-
lar import to our constitutional and statutory provisions upon
this subject; and so far as our investigation has gone, it is
generally held that the renting of even a part of the building
for profit, though the proceeds be devoted exclusively to the

charity, subjects such part, at least, to taxation." A long list of authorities is then given.

Although the constitution has been amended and the statute changed since the time of the Morris case, the substance of the opinion, as set out in the above excerpt, has been expressly approved by the Supreme Court in City of Houston v. Scottish Rite Benevolent Association, supra, and by the Commission of Appeals in State v. Settegast, 254 S. W. 925. It has been followed by a long line of subsequent decisions (not all of which expressly cite the Morris case as authority for the later holding) which clearly established the rule that the property exemption granted to "public charities" covers only real property and the improvements thereon with a further requisite that the charity must make an actual, direct and exclusive use of the property for charitable purposes. City of Longview v. Markham - McRee Memorial Hospital, 137 Tex. 178, 152 S. W. (2d) 1112; Santa Rosa Infirmary v. City of San Antonio, Tex. Com. App., 259 S. W. 926; Benevolent and Protective Order of Elks v. City of Houston, Tex. Civ. App., 44 S. W. (2d) 488; Markham Hospital v. City of Longview, 191 S. W. (2d) 695.

To summarize: The only real property on which The Fair Foundation could claim exemption by virtue of Section 7 of Article 7150 would be such buildings and lands as belong to and are exclusively used by The Fair Foundation for charitable purposes; the fact that income from real property is devoted to the charitable purposes of the trust is not enough to gain the exemption; nor does any exemption exist for the personal property owned by public charities.

## SUMMARY

If the trustees of The Fair Foundation, a charitable trust, have established an institution of learning and religion and have established an endowment fund for said institution, then by virtue of Section 1 of Article 7150, R. C.S., the personal property which constitutes the fund or any part thereof and which is not used with a view to "profit" in the sense of private gain is exempt from ad valorem taxes; however, no real property comprising part of such endowment fund is exempt from taxation save such as is bought in to protect bonds, mortgages, etc. and that only for a period of two years. The buildings and lands which are owned by an institution of learning and which are used exclusively for school purposes are exempt from taxation. If no such institutions have been established, the only real property on which The Fair Foundation could claim exemption by virtue of Section 7 of Article 7150 would be such buildings and lands

as belong to and are exclusively used by The Fair
Foundation for charitable purposes. Section 7 of
Article 7150 does not grant any exemption for the
personal property owned by public charities.

Very truly yours,

ATTORNEY GENERAL OF TEXAS

By Marietta Payne
Mrs. Marietta Payne
Assistant

MP/lh

APPROVED APR 8, 1947

Price Daniel
ATTORNEY GENERAL OF TEXAS