Henry A. Hudson, J.
This proceeding was instituted by the petitioner to review and correct an alleged erroneous and illegal assessment upon property owned by the petitioner in the city of Watertown, New York.
The petitioner has functioned as a community theatre in the city of Watertown since 1930. At that time and until 1947 is was an unincorporated association. It was incorporated in 1947 under the Membership Corporations Law. Its certificate was filed in the Department of State January 28, 1947. Prior to its incorporation the consent of the Commissioner of the Education Department of the State of New York was obtained pursuant to section 11 of article 2 of the Membership Corporations Law.
The petitioner has a membership of about 275. Membership is open to the public and membership dues are $1 a year. Membership and the use of its facilities are not prohibited to any any person by reason of race, color or religion. No officer, member or employee receives or is entitled to receive any compensation or remuneration from the operation of the petitioner with the exception that the director of major productions receives an honorarium of $100. Anyone interested in participating in the activities of petitioner is requested to do so by published notice in the daily press given before each production. The petitioner puts on three major productions a year. About 150 people are engaged at some time or other in the production of each play. Some 50 persons act on committees assigned to various phases of the work preparatory to rehearsal. From 4 to 27 persons actually participate as performers. Some 60 to 70 take part in either the direction, trials and in the various activities required for the construction, selection and handling of stage properties, costumes and make-up. Rehearsals extend for a period of from 8 to 10 weeks. There are three rehearsals a week. Experienced directors with previous professional stage experience or instruction and training in the field of dramatics act as directors and instruction is given to those participating in the petitioner’s activities in all phases *909 of dramatics and stage management. The three major productions of the petitioner are given in the South Junior High School in the city of Watertown and until the acquisition of the real property which is the subject of this proceeding in 1955, its rehearsals were held there also.
In 1955 the petitioner acquired the property in question located at the corner of Pearl and East Main Streets, known as the Pearl Street School. It consists of a two-story brick building with basement. Space is allocated for the storage of furniture and stage properties owned by the petitioner; for the storage of an extensive wardrobe of costumes and for the conduct of rehearsals for major stage plays. For this purpose a duplicate of the stage at the South Junior High School is laid out in the building. All committee meetings and meetings preparatory to the selection of and casting of plays are held in the building. The petitioner is associated with the State organization of community theatres comprising 60 or 70 little theatre organizations throughout the State. The State association and petitioner receive assistance and advice from Cornell University at which the annual conference of State associations is held and whose facilities through an extension service are available to petitioner. These facilities include a large loan library of plays and books on technical suggestions relating to the activities of the petitioner.
The purposes of the petitioner are set forth in its certificate of incorporation as follows:
“ To afford to the citizens of the City of Watertown, New York, an opportunity to study the drama as an art and to' aid interested persons in such study;
“ To promote the production of and to produce theatrical enterprises without pecuniary profit to any member, officer or director;
“ To foster the natural talents of those citizens interested in play production and management;
“ To promote study of all branches of stage craft incident to the production of plays in order to stimulate and encourage appreciation of the drama;
“ To devote all proceeds of such production and of all activities of the organization to the purposes of the organization and the expenses of performing those purposes.”
There is no dispute as to the facts above enumerated, the only question being whether petitioner’s real property above described is exempt from taxation under subdivision 6 of section 4 of the Tax Law. It is urged by the petitioner and denied by the respondent that the petitioner is a corporation organized *910 exclusively for the moral and mental improvement of men and women or for educational purposes and that the real property in question is used exclusively to carry out one or more of such purposes.
Subdivision 6 of section 4 of the Tax Law in part is as follows: ‘ ‘ The real property of a corporation or association organized exclusively for the moral or mental improvement of men and women, or for religious, bible, tract, charitable, benevolent, missionary, hospital, infirmary, educational, public playground, scientific, literary, bar association, library, patriotic, historical or cemetery purposes, for the enforcement of laws relating to children or animals, or for two or more such purposes, and used exclusively for carrying out thereupon one or more of such purposes either by the owning corporation or by another such corporation as hereinafter provided.”
While it is true that the courts have held that the Tax Law must be strictly construed against one claiming an exemption (People ex rel. Savings Bank v. Coleman, 135 N. Y. 231; People ex rel. Westchester Fire Ins. Co. v. Davenport, 91 N. Y. 574; People ex rel. Cornell Univ. v. Thorne, 184 Misc. 630), the courts have further held that:
“ where * * * the rule of strict construction would thwart the very command of the statute, such a rule would obviously have no application. * * * ‘ The higher public policy of encouraging contributions for public purposes controls and supersedes the policy of strict construction. ’ (People ex rel. Doctors Hosp. v. Sexton, 267 App. Div. 736, 743, affd. 295 N. Y. 553.)
“ The Tax Law provides a general exemption for classes of institutions which perform one or more of the services which by the settled public policy of the State of New York, since the time of its inception, are of such importance as to require or justify exemption by general law. This public policy, which is found not merely in the State of New York but generally through the United States, has existed from the inception of our government. To exempt such property from taxation is ‘ scarcely less the duty than the privilege of the enlightened legislator ’ ” (citing cases). (Williams Institutional Colored M. E. Church v. City of New York, 275 App. Div. 311, 313.)
^ Although * * * this statute must be strictly construed against tB^se claiming the exemption, nevertheless a strict construction dc>es|not mean such a literal interpretation as would defeat or nulHfy fhe intention of the Legislature. The exemption is a recognition "by. the Legislature of the advantage accruing to the State from the dissemination of knowledge within *911 its limits rather than a mere gift prompted by an undiscriminating generosity, and manifests a legislative policy to encourage the increase, growth and development of institutions of learning within the State.” (People ex rel. Missionary Sisters v. Reilly, 85 App. Div. 71, 79, affd. without opinion 178 N. Y. 609.)
The respondent urges that the purpose for which the petitioner is organized is not education and that even if some of its purposes are educational it is not engaged exclusively for educational purposes within the meaning of subdivision 6 of section 4 of the Tax Law. It points out that the specified purpose of the petitioner “ To promote the production of and to produce theatrical enterprises ” has nothing to do with education and that in producing plays to which the public is invited and for which the public is charged admission, the petitioner is conducting what is more in the nature of a commercial venture than an educational one and one which is held for the amusement of the members and the public rather than their education.
The petitioner urges that the production of its plays and the showing of them to the public fulfills its purposes of providing an opportunity for the study of the drama as an art and to foster the natural talents of those citizens interested in the production of plays and stage management and further that the fact that the plays and production are shown to an audience composed of the public who are charged an admission, is merely an incident and final fulfillment of its program of training and education and represents the ultimate purpose thereof.
While it is true that strictly speaking the actual performance of the play after weeks of rehearsal may not in and of itself fulfill all of the corporate purposes of the petitioner and probably redounds to the amusement and pleasure of the audience, it also serves as a vehicle for concentrated training and education in the art of dramatics and stage management to those participating therein. The play itself is the culmination of all of the work and effort comprising the educational program of the petitioner and must be construed as a part and parcel thereof just as a high school valedictory address is the reward for the successful culmination of four years of academic study and education rather than a part of the educational curriculum. Similarly from the standpoint of the petitioner, the fact that a charge is made to the public to attend a performance of the play does not make its activity a commercial venture rather than an educational one. The proceeds of the admission charges are used solely for the purpose of the petitioner in carrying on its activities and none of the proceeds find their *912 way into the hands of any of its officers, members or employees with the exception of its director who receives a nominal fee in the form of an honorarium. Such compensation is recognized as proper under the provisions of subdivision 6 of section 4 of the Tax Law wherein it states: ‘ ‘ But no such corporation or association shall be entitled to any such exemption if any officer, member or employee thereof shall receive or may be lawfully entitled to receive any pecuniary profit from the operation thereof, except reasonable compensation for services in effecting one or more of such purposes ”. I am of the opinion that provided the petitioner is organized for the moral or mental improvement of men and women or for educational purposes that it must be deemed to be organized exclusively for such purpose and its real property, the subject matter of this proceeding must be deemed to be used exclusively for carrying out such purpose.
The manner in which subdivision 6 of section 4 of the Tax Law should be interpreted in deciding whether or not real property is exempt from taxation is very carefully considered in People ex rel. Untermyer v. McGregor (295 N. Y. 237, 242). In this ease the Court of Appeals held that a provision in the certificate of incorporation which provided “ ‘and to develop, improve, maintain and operate such land as and for a public park and gardens, and, if and to the extent so determined by its directors from time to time, as and for a public playground and/or for horticultural purposes ’ ” could not be construed as urged by the tax authority to give the directors a choice in the alternative of devoting the premises to a public playground at certain times and for horticultural purposes at other times but that in view of the proven intentions of the directors demonstrated by the manner in which they had developed and operated the property, it must be recognized that the premises had been used as a public park and grounds and for no other purposes and that the attractiveness and variety of the floral and horticultural displays had a great bearing and influence upon the extent to which the property was patronized by the public. Under these circumstances, the court held, at page 244: “ it seems clear and indisputable that it is exempt from taxation under subdivision 6 of section 4 of the Tax Law.” • A generally similar result was obtained, following People ex rel. Untermyer (supra) in the ease of Matter of Major Deegan Blvd. [Expressway] (131 N. Y. S. 2d 330).
I am of the opinion that the petitioner comes under the provision of subdivision 6 of section 4 of the Tax Law providing ' that an exemption should be allowed upon real property of a *913 corporation, organized ‘ ‘ for the moral or mental improvement of men and women ”, and as such is entitled to exemption. (Matter of Syracuse Y. M. C. A., 126 Misc. 431; Matter of Watson, 171 N. Y. 256.) In connection with a bequest to the Y. M. C. A. of Rome, New York, the Court of Appeals held that the Tax Law as it existed prior to 1896, which contained the same provisions as subdivision 6 of section 4 would have made the legacy in question exempt although under the law as it stood at the time of the determination of the court, required a holding that a legacy to a missionary society of the Methodist Church would not have been exempt although the legacy to the Y. M. C. A. would still be exempt. The reason for this holding was that the Y. M. C. A. was an organization formed for the purpose of the improvement of the spiritual, mental and physical condition of young men. (Matter of Moses, 123 N. Y. S. 443, 447.) The court in considering the then section 221 of the Tax Law which exempted religious, educational, charitable, missionary, benevolent, hospital, infirmary corporations and organizations for bible or tract purposes from liability for all tax purposes and exempted certain personal property of corporations organized exclusively for the moral or mental improvement of men or women or for scientific, library, patriotic, cemetery or historical purposes or for the enforcement of laws relating to children or animals held that a Y. M. C. A. and a Y. W. C. A. were within the classification “ educational ”. The court further held that a Y. M. O. A. corporation was obviously a corporation organized for the mental or moral improvement of men but indicated that the statute as it was then worded did not permit a determination of tax exemption upon that ground. It then went on to hold the corporation to be organized for “educational” purposes. It is interesting to note that the statute then under consideration (1910) was not worded as the present subdivision 6 of section 4 of the Tax Law is worded and also interesting to note that the present statute places all of the purposes covered under the statute under consideration in Matter of Moses (supra) in the same category as far as the right to exemption is concerned. It can readily be observed in following the many decisions which have interpreted the limits which should be placed upon the wording of the various statutes preceding the present subdivision 6 of section 4 of the Tax Law, that the Legislature has gradually extended the corporate purposes which are exempt from taxation and that such extension of purposes has usually followed some restricted interpretation of the courts upon the meaning of some stated corporate purpose.
*914 The need for a reasonable and sensible application of the true sense of the words of the statute was very well expressed by the court in Matter of Moses (p. 448, supra):
“ The learned counsel for the appellant invokes the rule of strict construction in considering exemptions from taxation. But that rule is not to be invoked to defeat the intention of the lawmaker. Sutherland on Statutory Construction, § 356. Story, J., in United States v. Winn, 3 Sumn. 209, Fed. Cas. No. 16,740, says:
" ‘ * Where words are general, and include various classes of persons, I know of no authority which would justify the court in restricting them to one class, or in giving them the narrowest interpretation, when the mischief to be redressed by the statute is equally applicable to all of them. And where a word is used in the statute which has various known significations, I know of no rule that requires the court to adopt one in preference to another simply because it is more restrained, if the objects of the statute equal the largest and broadest sense of the word. In short, it appears to me that the proper course in all these cases is to search out and follow the true intent of the Legislature, and to adopt that sense of the words which harmonizes best with the context and promotes in the fullest manner the apparent policy and objects of the Legislature ’
My attention has been called to the case of Matter of Mount Tabor Lodge v. Nordstrom (283 App. Div. 199, 201). I do not consider that it is applicable to the case here under consideration. In that case the court stated that there is no proof that the petitioner was organized exclusively for the moral and mental improvement of men and women.
We next come to the consideration of whether the petitioner comes within the classification of subdivision 6 of section 4 as a “ corporation organized exclusively for * * * educational * * * purposes ”.
In Matter of Mergentime (113 N. Y. S. 948) the court held that the Metropolitan Museum of Art was a corporation organized for educational purposes within the meaning of the Tax Law and as such was exempt from taxation thereunder. (See, also, Matter of Moses, supra; People ex rel. Buffalo Turn Verein v. Assessors of City of Buffalo, 257 App. Div. 902; People ex rel. Christodora House v. Miller, 278 N. Y. 652; Silver Bay Assn. for Christian Conferences & Training v. Braisted, 80 N. Y. S. 2d 548.)
In People ex rel. Christodora House v. Miller (supra) the court held that the purposes of the Christodora House were solely and exclusively for the mental and moral improvement *915 of men and women and for charitable and educational purposes and that, therefore, it was entitled to exemption.
No case has been called to my attention and I have been unable to find one in this State in which the right of a little theatre corporation to exemption of its real property from taxation has been determined. The respondent urges that the case of Little Theatre of Dallas v. City of Dallas (124 S. W. 2d 863) is controlling. I am of the opinion that the statute of the State of Texas covering the right of exemption from taxation of the Little Theatre of Dallas Inc., is very different from subdivision 6 of section 4 of the Tax Law of the State of New York. In deciding the ease, the court stated at pages 864 and 865 as follows:
“ The foregoing (which includes the purposes for which the theatre was incorporated and substantially its activities), presents for our decision the question, whether or not, under the provisions of the Constitution (Sec. 2, Art. 8 Vernon’s Ann. St.) and the statute enacted in pursuance thereof (Subdiv. 1 of Art. 7150), the property involved was owned and used exclusively for school purposes. The burden of proof to establish that issue is upon the appellant.
“ The Constitution does not create the exemption but simply provides that, the Legislature, by a general law, may ‘ exempt from taxation * * * all such buildings used exclusively and owned by persons or associations of persons for school purposes [etc.] * * * ’. Pursuant to this authority, the Legislature provided that 1 public school houses * * * and the grounds attached to such buildings necessary for the proper occupancy, use and enjoyment of the same, and not leased or otherwise used with a view to profit. * * * All public colleges, public academies, all buildings connected with the same, and all lands immediately connected with public institutions of learning, * * *’ shall be exempt from taxation.”
“ The undisputed facts, in our opinion, show that appellant’s primary purpose is to furnish pleasure and entertainment to its members and patrons; although it gave instruction in diction, acting, play writing, fencing, the use of voice, dancing, etc., yet, however laudable and, in a general sense, educational and cultural these activities, they fall far short of showing that the property in question was used exclusively for school purposes.”
The question determined by the Texas court was not whether the purpose of the corporation was educational but rather whether the property was owned and used exclusively for school purposes.
*916 I am of the opinion that the uses of the real property by the petitioner herein were for educational purposes within the meaning of subdivision 6 of section 4 of the Tax Law of the State of New York.
Inasmuch as subdivision 6 of section 4 of the Tax Law provides that a corporation which is organized exclusively for the mental or moral improvement of men and women or for educational purposes, along with a number of other purposes, or if such corporation is organized for two or more of such purposes, its real estate, used exclusively for such purposes, is exempt from taxation, I am satisfied, that the petitioner comes within the exempt class under subdivision 6 of section 4 of such law and that the petitioner is entitled to the relief requested.
Order accordingly with costs of the proceeding.