## MASONIC TEMPLE ASS'N et al. v. AMARILLO INDEPENDENT SCHOOL DIST.*
### (No. 3085.)

Court of Civil Appeals of Texas. Amarillo. Oct. 17, 1928.

Rehearing Denied Nov. 7, 1928.

Stone & Guleke, of Amarillo, for appellants.
P. F. Sapp, of Amarillo, for appellee.

JACKSON, J. The plaintiff, the Amarillo Independent School District, instituted this suit in the district court of Potter county, Tex., against the defendants, the Masonic Temple Association of Amarillo, and the Mercantile Trust Company of St. Louis, Mo., to recover the sum of $1,047.10, delinquent taxes, interest, penalties, costs, etc., for the year 1926, legally levied and assessed by the plaintiff against lot No. 6 and the south 20 feet of lot No. 7, block 4, of the Glidden and Sanborn addition to Amarillo, and the improvements thereon, all of which is situated within the Amarillo Independent School District.

The Masonic Temple Association is a corporation incorporated under and by virtue of the laws of the state of Texas, with a capital stock of $200,000, divided into shares of $100 each, with a board of nine directors selected as follows: Two from the members of Amarillo Lodge No. 731, two from the members of Amarillo Chapter 196, two from the members of the Amarillo Commandery No. 48, and two from the members of Khiva Temple and one from some other Masonic body that may be hereafter admitted to joint ownership in the building by acquiring stock in the corporation. The Mercantile Trust Company is a corporation incorporated under and by virtue of the laws of the state of Missouri.

The defendants urge as a defense to the payment of taxes that the Masonic Temple Association is an "institution of purely public charity" within the contemplation of the Constitution of the state of Texas, the stat-utes exempting the property of such institutions from tax liability.

The case was tried before the court without the intervention of a jury, and judgment rendered against the defendants for the taxes, interest, penalties, costs, etc., and a foreclosure of the tax lien against the above-described premises, from which judgment this appeal is prosecuted.

The agreed statement of facts discloses:

That the charter of the Masonic Temple Association provides that "the purpose of the corporation is the support of benevolent and charitable undertakings, to wit: The erection of a building not for profit but for the use and benefit of such various Masonic bodies and lodges of Amarillo, Texas, as may become stockholders and joint owners and for the free use of visiting Masonic bodies and the promotion of charitable and educational activities of the order, but shall never be dedicated to the purpose of commercial gain or profit." That the Masonic Temple Association paid $20,000 for the land and erected thereon a three-story brick building with a full basement at a cost of $201,358.51. That the building contains lodge rooms for the Blue Lodge, the Chapter, the Commandery, and the Khiva Temple. That in addition to such lodge rooms, the building was constructed with a banquet hall and kitchen, a dance hall, a library room, a pool and billiard room, etc. That the lot and improvements are owned by the Masonic Temple Association of Amarillo, Tex., subject only to an outstanding incumbrance of the Mercantile Trust Company and the alleged tax lien sued upon by the plaintiff. That the building is occupied by Amarillo Lodge No. 731 Ancient Free and Accepted Masons, Palo Duro Lodge No. 1239 Ancient Free and Accepted Masons, Amarillo Chapter No. 196 Royal Arch Masons, Amarillo Commandery No. 48 Knights Templar, and Khiva Temple, which together own $61,200 of the capital stock of the Masonic Temple Association. That each of said Masonic bodies is incorporated under a charter that provides in substance that it is formed for charitable and benevolent purposes, to cement the bonds of good fellowship and brotherly love among its members and adherents, and to practice the art of ancient free and accepted Masonry, Royal Arch Masonry, etc., as has been done from time immemorial.

That neither the Masonic Temple Association nor the Masonic bodies are organized or conducted for profit. That no officer of the Masonic Temple Association receives any salary and no officer of any of the Masonic bodies mentioned receives any consideration for his services, except the secretary of each, who is paid for his services. That the Masonic Temple Association owns no other property except the lot and the building, and that the

*Writ of error refused.

furniture and fixtures in the building belong to the respective lodges. That the property involved in the suit is actually used by the members of the Masonic bodies above named, and no person is permitted the use of the property except Master Masons in good standing. That the building is used by such Masonic bodies for the purpose of conducting lodge meetings, initiations, ceremonials, and such entertainments as are provided from time to time by the respective organizations, but no person is permitted to attend any function unless he is a member in good standing in the organization which he visits and no charge is made for any attendance upon any function or ceremonial. That the Masonic Temple Association has no income from rents or otherwise except that the Masonic bodies occupying the building pay annually to the Masonic Temple Association $18,000, which is applied to the payment of interest on outstanding indebtedness, interest-bearing capital stock held by individuals amounting to $75,000, and "current expenses in the nature of heat, light, water, and janitor service in the building, as well as insurance premiums and taxes to be paid." That the lodges are secret fraternal organizations using said Masonic building for their lodge meetings in which are conducted initiations and ritualistic work, from which the public is excluded.

The lodge work is the usual and customary work of Masonic lodges and in its nature is fraternal, educational, social, and charitable, but the work is only partly charitable and the lodges do other work besides dispensing charity. That public charities are not conducted in the building, but are discussed and decisions made on needy charity cases. That the actual dispensing of charity to the public is never made in the building, but is made to Masonic institutions in the state of Texas and elsewhere, such as hospitals, schools, homes for aged Masons, widows, orphans, etc., and that all moneys acquired from initiations, dues, etc., by such Masonic bodies not paid out for current expenses and on building obligations are devoted to charitable and educational purposes and never become the subject-matter of gain or profit for private interests. That the Masonic Temple Association rents no portion of its property and grants no concessions whatever for commercial purposes. That the building is never open to the public and is exclusively used by members in good standing of the Masonic lodges occupying it and visiting members from other lodges; that the Grand Lodge of Texas, the Grand Royal Arch Chapter of Texas, the Grand Commandery of Texas, and the Imperial Council of the Shrine, to which the Masonic bodies occupying the building are subordinate, maintain Masonic institutions of charity in this state and elsewhere, and that the Masonic bodies occupying the building and such grand lodges contribute to suffering humanity in periods of disaster, such as storms, floods and other calamities, regardless of whether the recipients are members of the organizations or not, and that all moneys acquired by all such organizations, not expended for administration purposes, building obligations, etc., are devoted to charitable and educational purposes and never become the subject-matter of private gain or profit. That during 1926, Amarillo Lodge No. 731 made disbursements aggregating $7,201.-53, which was appropriated as follows: To charity and educational funds, 34.4 per cent.; administrative expenses, including salary to secretary, 21.2 per cent.; Masonic Temple Association for building obligations, 44.772 per cent.; refreshments, .028 per cent. That during the same year, Palo Duro Lodge No. 1239 made disbursements aggregating $1,186.-50, apportioned as follows: To charity and educational funds, 17.2 per cent.; administrative expenses, including salary to secretary, 18.9 per cent.; Masonic Temple Association for building obligations, 63.9 per cent.; entertainment, none. That Amarillo Chapter No. 196 Royal Arch Masons made disbursements during the year aggregating the sum of $2,259.67, apportioned as follows: To charity and educational funds, 21.3 per cent.; administrative expenses, 16.1 per cent.; to Masonic Temple Association for building obligations, 62.6 per cent.; entertainments, none. That the Amarillo Commandery No. 48, during the year, made disbursements aggregating $5,330.60, apportioned as follows: To charity 12 per cent.; to educational funds, 8.1 per cent.; administrative expenses, including salary to recorder, 7.8 per cent.; to the Masonic Temple Association for building obligations, 72.1 per cent.; entertainment, none. That the Khiva Temple, for the year 1926, disbursed $22,986.37, apportioned as follows: 22.8 per cent. to charity; 44.5 per cent. to the building fund; 6 per cent. to equipment; 8.1 per cent. to miscellaneous expenses; 14.1 per cent. to salaries of recorder and treasurer; and 4.5 per cent. to entertainment. That house rules have been adopted providing for a committee of three members to be appointed by the board of directors of the Masonic Temple Association, who shall have charge of the building. The duties of this committee are purchasing supplies, furniture, literature, etc., hiring of necessary help, and enforcing rules for the government of the building, all of which is subject to the approval of the directors of the Masonic Temple Association.

These rules, among other things, provide: That the library room shall be opened on Sundays from 9 a. m. to 7 p. m. That the banquet room and kitchen, together with its equipment, shall not be used except by the regularly appointed banquet committees. That nonresident Master Masons visiting Amarillo may have the privilege of the recre-

ation rooms of the Temple for a period of two weeks when holding guest cards issued by the secretary, etc. That no part of the building shall be used at any time by religious or political organizations. That no charge shall be made for any form of entertainment given in the Temple. That hats, coats, etc., must be deposited in the regular hat and coat room on the main floor or adjacent to the lodge-room. That strict decorum and quietude must be maintained in the library so as not to disturb those wishing to read. That the clubroom on the first floor of the Temple shall be open for the use and enjoyment of all Master Masons who are members in good standing of the lodges occupying the building from 9 a. m. to noon, from 1:30 p. m. to 6 p. m., and from 7:30 to 10:30 p. m. on week days, with certain exceptions, and shall be open from 1 p. m. to 6 p. m. on Sundays. That Masonic courtesy and conduct must be maintained in the clubroom, and no group of players should monopolize billiard, pool or domino tables when others are wanting to play. Three games should be sufficient for any group in such a case. That the members, by careful playing, will keep the billiard and pool balls from jumping tables and chipping on the concrete floor. No massie shots allowed at any time. No sitting on billiard or pool tables allowed. That the board of directors of the Masonic Temple Association reserves the right to close the clubroom at any time at its discretion should the conditions warrant such action. That the Masonic Temple Association owes the taxes sought to be recovered on the property unless it is exempt from taxation as an institution of purely public charity.

In the case of City of Houston v. Scottish Rite Benev. Ass'n, 111 Tex. 191, 230 S. W. 978, the charter of the Scottish Rite Benevolent Association states that the purpose of the incorporation is to provide for needy Masons, their wives, widows, mothers, and children. The facts show that the Scottish Rite Benevolent Association had no capital stock; that it purchased lots in the city of Houston and erected a building thereon called the "Scottish Rite Cathedral," which was owned by the Scottish Rite Benevolent Association, "subject to the rights of two Masonic organizations named San Jacinto Lodge of Perfection No. 6, and Houston Chapter of Rose Croix No. 5," which had furnished "the funds to purchase the property and to erect the improvements thereon"; that the Cathedral was not rented for commercial purposes, and the Scottish Rite Benevolent Association owned no other property used for gain or profit; that none of the officers of said association or said lodges were paid anything for their services; that the funds of said association were voted to it by San Jacinto Lodge of Perfection No. 6 and the Houston Chapter of Rose Croix No. 5, whose funds were derived from fees of initiation and dues of members; that the funds received by the association from these two Masonic bodies were appropriated for various charitable purposes and invested in a home to enable them to pursue their work as Masonic lodges; that the money dispensed for charity was for the purpose of relieving needy Masons, their wives, widows, mothers, and children; that the principal object of the association was to expend its funds for the relief of the classes named above, or for supporting institutions for Masons; that large portions of its money had been spent during the Galveston flood and contributions had been made to the Harris County School for Girls, the Industrial Home for Girls, and other organizations; that the property was used exclusively to furnish a lodgeroom for the members of the Scottish Rite Benevolent Association and to provide a lodgeroom for San Jacinto Lodge of Perfection No. 6 and Houston Chapter of Rose Croix No. 5; that said lodges were engaged in the work of the Masonic order "which, in the language of the agreement of counsel, is not an order 'that does nothing but dispense charity, but it does dispense charity.' Their entire receipts were donated to the association less only necessary operating expenses."

The facts in the case at bar show that the Masonic Temple Association of Amarillo was incorporated with a capital stock of $200,000 for the purpose of erecting a building which shall never be dedicated to the purpose of commercial gain or profit, but for the use and benefit of such Masonic bodies and lodges of Amarillo as may become stockholders and joint owners, and for the use of visiting Masonic bodies and the promotion of charitable and educational activities of the order; that the Masonic Temple Association purchased land and erected thereon the building in controversy at a cost of $221,358.51; that the association owned the property subject to the liens against it and to the interest of private individuals who own $75,000 of the capital stock and subject to the interest of the Masonic bodies which occupy the building and own $61,200 of the capital stock; that said association does not occupy the building and does not rent it for commercial purposes, profit or gain, but permits Amarillo Lodge No. 731, Palo Duro Lodge No. 1239, Amarillo Chapter No. 196, Amarillo Commandery No. 48 Knights Templar, and Khiva Temple to actually and exclusively occupy the building; the lodgerooms for lodge purposes and the banquet hall and kitchen, the ballroom, the library and reading room, and the pool and billiard room for the recreation of the members of said lodges and visiting Master Masons, and in order that they may enjoy the fellowship and companionship which is promoted by frequent social intercourse and association; that all of the moneys derived by said Masonic bodies from fees for initiation,

dues of members, and all other sources, except the sums required to defray current expenses and outstanding indebtedness, with interest thereon, against the building, are devoted to charitable purposes; that no official of the Masonic Temple Association receives any salary and no official of any of the Masonic bodies receives any remuneration for his services except the secretaries; that said Masonic lodges are secret, fraternal organizations and use the lodgeroom for their lodge meetings, in which are conducted initiations and ritualistic work, and the other rooms are for social purposes; that the lodge work is the usual and customary work of Masonic lodges, and in its nature is fraternal, educational, social, and charitable, but the work is only partly charitable and the lodges do other work besides dispensing charity.

Judge Greenwood, in City of Houston v. Scottish Rite Benevolent Association, supra, says:

"The opinion of Judge Gaines, in Morris v. Masons, supra, made certain the meaning of the terms of the Constitution, in section 2 of article 8, that: 'The Legislature may, by general laws; exempt from taxation * * * all buildings used exclusively and owned by persons or associations of persons for school purposes * * * and all institutions * * * of purely public charity.' Such meaning is that the Legislature may, by general laws, exempt from taxation 'all buildings used exclusively and owned by persons or associations of persons for school purposes,' and 'all buildings used exclusively and owned by institutions of purely public charity.' So no building comes within the exemption authorized by the Constitution to 'institutions of purely public charity' unless it is both owned and used exclusively by such an institution. No departure from the above construction of the mandate of the Constitution can be favorably considered, for it was the language of section 2, of article 8, as construed by the Supreme Court, which was carried without change into the subsequent amendment of the section. The presumption is conclusive that the people readopted the provision with knowledge of its declared intent."

After disposing of the contention of the appellant in the case, the city of Houston, that the Scottish Rite Benevolent Association was not an institution of purely public charity, because those to whom it extended aid were confined in the main to Masons and their relations, he concludes as follows: "But the question remains whether the property was owned and used exclusively by an institution of purely public charity. It does not satisfy the constitutional requirement that the use by others was permitted by the owner to obtain revenues to be devoted entirely to the owner's work of purely public charity. Morris v. Masons, 68 Tex. 703, 5 S. W. 519. Nor is the requirement satisfied by the fact that those sharing the use pay no rent. Red v. Johnson, 53 Tex. 288. The actual, direct use must be exclusive on the part of such an institution as is favored by the constitutional provision. By the very manner and terms of this property's acquisition, it was required to be used, as it was in fact used, by the two Masonic orders, 'to enable them to pursue their work as Masonic lodges,' such work being, as agreed, only partly charitable. To the extent that the property was used by Masonic organizations, whose activities included other fields than charity, it was not, and could not be, used exclusively by an institution of purely public charity."

The agreed statement shows that the "lodge work is only partly charitable and the lodges do other work besides dispensing charity." Therefore their activities include other fields than charity, and to that extent the property is not used exclusively by an institution of purely public charity.

In our opinion, the opinion of Judge Greenwood in the case, supra, is conclusive against appellant's contention, and the judgment is affirmed.

RANDOLPH, J., not sitting.