CITY OF HOUSTON et al., Appellants,

v.

RIVER OAKS GARDEN CLUB, Appellee.

No. 13967.

Court of Civil Appeals of Texas.

Houston.

July 12, 1962.

On Motion for Rehearing Sept. 20, 1962.

Second Motion for Rehearing Denied Oct. 11, 1962.

R. H. Burks, City Atty., Homer T. Bouldin, Senior Asst. City Atty., Houston, for appellant.

Butler, Binion, Rice & Cook, Tom Alexander, Robert B. Reynolds, Houston, for appellee.

COLEMAN, Justice.

This is an appeal from the judgment of the District Court of Harris County that certain property owned by appellee was exempt from taxation by appellants, City of Houston and Houston Independent School District.

The trial court filed findings of fact and conclusions of law, to which appellants properly preserved objections. Aft-er a careful consideration of the evidence, we find that the findings of fact are properly supported by competent testimony.

Appellee claims exemption from taxation by reason of the provisions of Sections 14 and 20 of Article 7150, Vernon's Ann.Civ. St., providing as follows:

"14. Art Galleries, etc.—All property belonging to Art Leagues and Societies of Fine Arts, whether incorporated or not, which are devoted wholly and without charge to the promotion of education and learning, including Art Galleries and exhibits therein contained, the land upon which the same are situated, which is devoted exclusively to such purposes, and also all land, money, pictures and other works of art and all other personal property which may be necessary and in actual use for the purpose of carrying out said educational feature. * * *"

"20. American Legion and other Veterans' Organizations.— * * *, or any non-profit organization chartered or incorporated under the Texas Statutes for the purpose of preserving historical buildings, sites and landmarks, not leased or otherwise used with a view to profit, shall be exempt from taxation in this State. * * *"

This portion of Sec. 20 is attacked as being unconstitutional.

Section 2 of Article 8 of the Constitution of Texas, Vernon's Ann.Civ.St. provides that the legislature may by general law exempt from taxation certain property, including all buildings used exclusively and owned by persons or associations of persons for school purposes. The Constitution also provides that this power to exempt from taxation may be exercised in favor of "institutions of purely public charity".

In Benevolent & Protective Order of Elks Lodge No. 151 v. City of Houston,

Tex.Civ.App., 44 S.W.2d 488, error ref., the court stated:

"In the above constitutional provision, the word 'purely' is intended to modify the word 'charity' and not the word 'public,' so as to require the institution to have a wholly altruistic quality and exclude from it every private or selfish interest or profit or corporate gain. City of Houston v. S.[cottish] R.[ite] B.[enev] Ass'n, 111 Tex. 191, 230 S.W. 978. In law, the word 'purely' is used in the sense of and the equivalent to 'only,' 'wholly,' 'exclusively,' 'completely,' 'entirely,' and 'unqualifiedly.' 51 C.J. 100. Therefore, for an institution to be one of 'purely public charity,' it must be one whose property is used wholly and exclusively for charitable purposes."

The general classes of charitable purposes were set out in Powers v. First Nat. Bank of Corsicana, Tex.Civ.App., 137 S. W.2d 839, aff'd 138 Tex. 604, 161 S.W.2d 273, as follows:

"A public charity or trust is one for the benefit of the public at large or some substantial and indefinite portion of it. Charitable purposes include (a) the relief of poverty; (b) the advancement of education; (c) the advancement of religion; (d) the promotion of health; (e) governmental or municipal purposes; and (f) other purposes the accomplishment of which is beneficial to the community. Restatement of the Law of Trusts, p. 1140, sec. 368; 10 Amer.Jur. 621; 14 C.J.S., Charities, page 439, § 12; Scott on Trusts, 1972; Perry on Trusts & Trustees, Vol. 2, p. 1184."

 We conclude that the purpose of preserving historical buildings under the restrictions imposed by Section 20 is "a purpose the accomplishment of which is beneficial to the community" and, therefore a "purely charitable purpose" and that an institution formed for that purpose

as well as for the purpose of promoting education and learning in the field of fine arts would be an institution of purely public charity. Section 20 purports to exempt from taxation all buildings, together with the lands belonging to and occupied by "* * * any non-profit organization chartered or incorporated under the Texas Statutes for the purpose of preserving historical buildings," provided that such buildings and lands are not leased or otherwise used with a view to profit.

The constitutional provision relating to institutions of purely public charity has no specific requirement that the use made of the property for which tax exempt status is claimed be the same as the charitable purpose or purposes for which the organization was formed. Section 14 of Article 7150, V.A.C.S., however, makes this requirement. The trial court found that several organizations used the property for meetings of an educational nature. The *use* made of the property was controlled by appellee, but the organizations themselves were not affiliated with appellee or under its control. We think the statute does not require that the use of the premises be exclusive in the organization owning the property so long as the property is used solely for the purpose of promoting education and learning.

However, the Supreme Court of Texas in Morris v. Lone Star Chapter No. 6, R. A. M., 68 Tex. 698, 5 S.W. 519, determined that the constitutional provision under consideration should be read "all buildings used exclusively and owned by institutions of purely public charity," and further stated: "the exclusive use meant being the actual and direct use for the purposes of the association, * * *." Although the language of the constitutional provision has been broadened, this interpretation of these particular words has been restated in many subsequent cases. City of Houston v. Scottish Rite Benev. Ass'n, 111 Tex. 191, 230 S.W. 978; State v. Settegast, Tex.Com.App., 254 S.W. 925; Benevolent & Protective Order of

Elks Lodge No. 151 v. City of Houston, supra; Little Theatre of Dallas, Inc. v. City of Dallas, Tex.Civ.App., 124 S.W.2d 863.

In the case of Santa Rosa Infirmary v. City of San Antonio, Tex.Com.App., 259 S.W. 926, the court said:

"The constitutional requirement is twofold; the property must be owned by the organization claiming the exemption; it must be exclusively used by the organization, as distinguished from a partial use by it, and a partial use by others, whether the others pay rent or not."

The courts have refused exemptions where part of the property was leased to others and the proceeds used for the institution's charitable purposes. State v. Settegast, supra; City of Longview v. Markham-McRee Memorial Hospital, 137 Tex. 178, 152 S.W.2d 1112.

In City of Houston v. Scottish Rite Benev. Ass'n, supra, the court said:

"So no building comes within the exemption authorized by the Constitution to 'institutions of purely public charity' unless it is both owned and used exclusively by such an institution. * * * The actual, direct use must be exclsuive on the part of such an institution as is favored by the constitutional provision."

In Benevolent & Protective Order of Elks Lodge No. 151 v. City of Houston, supra, the court said: "Under the law, for the property of appellant to be exempt from taxation, it must not only be owned, but also be used exclusively, by an institution of purely public charity."

Appellee succinctly states its position in these words:

"The requirement is that the Garden Club use the premises exclusively for the promotion of education and learning, without charge. The fact that other organizations of the same

purpose and use-pattern are allowed to assist in fulfilling that purpose, under the control of the Garden Club, meets the letter and the theory of Section 14 and Article 8, Sec. 2 of the Constitution, as construed by our Courts."

In support of this position it cites Morris v. Lone Star Chapter No. 6, Royal Arch Masons, 68 Tex. 698, 5 S.W. 519, where the Supreme Court said: "the exclusive use meant being the actual and direct use for the purposes of the association, * * *." Appellee further contends that the Supreme Court, in City of Houston v. Scottish Rite Benev. Ass'n, supra, apparently attached little significance to the stipulated fact that the building was used as a meeting place by various Masonic organizations. Appellee's principal reliance, however, rests on the case of Santa Rosa Infirmary v. City of San Antonio, Tex.Com.App., 259 S.W. 926. In this case the Sisters of Charity of the Incarnate Word, an organization incorporated for purely charitable purposes, conveyed a hospital, which it had previously operated, to another corporation organized for a purely charitable purpose, the Santa Rosa Infirmary. The latter corporation was controlled by the former. The Santa Rosa Infirmary operated the hospital in the usual manner and at a profit. Appellee particularly stresses the following quotation:

"No question is raised here of the ownership of the property, and it seems to us that the exclusive use of it by the Sisters of Charity of the Incarnate Word is equally as indisputable. It was a hospital enterprise, and as such necessarily presupposed patients, surgeons, drugs, nurses, surgical equipment, clinics, and the usual accompaniments of such an institution. Notwithstanding the presence of all these in and about the premises the hospital was exclusively used by its owners for its avowed purpose of a general hospital, just as ef-

fectually as a hotel could be said to be exclusively used by its proprietor, notwithstanding guests who paid for their rooms occupied them.

"There is no claim here that any part of the hospital building was leased out in the ordinary sense, but it is insisted that, because the major part of the rooms in the hospital were used to take care of pay patients, and because surgeons, not themselves engaged wholly in a charitable work, were permitted to use the operating rooms for certain fixed charges imposed upon their patrons able to pay, and because a certain ward was devoted to the charitable work of St. Luke's Clinic, and because the dispensary or small drug store in the building sold drugs to its pay patients for a profit, the use of the property by the Sisters of Charity became thereby nonexclusive by them, and also deprived the organization of its characteristic as a purely public charity. The Constitution does not in terms require a charitable institution, if it may claim exemption from taxation, to use its buildings exclusively for charitable purposes, as it does require in the case of educational institutions that they be used exclusively for educational purposes, but the requirement is only that the buildings be used by the charitable institution, as heretofore pointed out."

However, the court further stated:

"St. Luke's Clinic was wholly charitable, and was conducted by the very same Sisters who controlled and operated all the remaining part of the hospital activities. It was the same owner under a separate designation merely treating eye, ear, nose, and throat troubles of charity patients exclusively, as distinguished from the remaining general hospital work of the institution for both its pay and charity patients. The operation of the drug store in the building seemed in its net result to be a losing rather than a profitable venture. It furnished drugs only to the patients of the hospital, for pay and profit to those able to pay, and free to its charity patients. It was also operated exclusively by the same Sisters conducting the general enterprise."

In view of the admonition found in many cases that "Exemptions from taxation are never favored, and in the construction or interpretation of a law extending exemption to any citizen or class of property all doubts are resolved against the exemption. * * *" (Markham Hospital v. City of Longview, Tex.Civ.App., 191 S.W.2d 695), we have reluctantly reached the conclusion that the use of the property in question by other organizations, even though such organizations have similar purposes and use patterns since these organizations cannot be said to be the "same owner under a separate designation," renders the use by appellee nonexclusive and destroys the tax exempt status of the property. While the Supreme Court in the case of Harris v. City of Ft. Worth, 142 Tex. 600, 180 S.W.2d 131, said:

"If the language used in the Constitution or in an Act leaves its intent obscure, the courts may resort to certain aids in the construction of same, such as the purpose sought to be accomplished, the history of the legislation, the public policy of the State in regard thereto, etc. 39 Tex.Jur. p. 176, § 93, p. 232, § 124; 9 Tex.Jur. p. 438, § 26. * * *

"The Constitution and the Statutes of this State evince a liberality in the exemption from taxation of property for educational or religious purposes."

neverthless we are of the opinion that we cannot depart from the well established rule that the use of property devoted to charitable purposes must be exclusive in the owner.

We find it unnecessary to discuss other questions raised by appellants' brief.

The judgment of the trial court is reversed and judgment is here rendered that the property in question is not exempt from taxation by appellants.

Appellee's motion for rehearing is sustained in part and this opinion shall be substituted for our original opinion, which is hereby withdrawn.