RIVER OAKS GARDEN CLUB, Petitioner,

v.

CITY OF HOUSTON et al., Respondents.

No. A–9313.

Supreme Court of Texas.

June 26, 1963.

Rehearing Denied Oct. 17, 1963.

852

Butler, Binion, Rice & Cook, Tom Alexander, with above firm, Houston, for petitioner.

R. H. Burks, City Atty., Houston, Homer T. Bouldin, Asst. City Atty., for respondents.

CALVERT, Chief Justice.

River Oaks Garden Club sought a judgment in the trial court, pursuant to the Declaratory Judgment Act, Art. 2524—1 [1], declaring certain property owned by it to be exempt from ad valorem taxes assessed by the City of Houston and Houston Independent School District for the years 1959 and 1960, and from those to be assessed in future years. The trial court rendered judgment so declaring.

The Court of Civil Appeals reversed the judgment of the trial court and rendered judgment declaring that the property was not exempt from such taxes. 360 S.W.2d 855. We affirm the judgment of the Court of Civil Appeals.

Petitioner's claim to exemption is asserted under the provisions of Secs. 14 and 20 of Art. 7150. They read in pertinent part as follows:

"14. Art Galleries, etc.—All property belonging to Art Leagues and Societies of Fine Arts, whether incorporated or not, which are devoted wholly and without charge to the promotion of education and learning, including Art Galleries and exhibits therein contained, the land upon which the same are situated, which is devoted exclusively to such purposes, and also all land, money, pictures and other works of art and all other personal property which may be necessary and in actual use for the purpose of carrying out said educational feature.

\* \* \* \* \* \*

"20. American Legion and other Veterans' Organizations.—Hereafter all buildings, together with the lands belonging to and occupied by * * * any non-profit organization chartered or incorporated under the Texas Statutes for the purpose of preserving historical buildings, sites and landmarks, not leased or otherwise used with a view to profit, shall be exempt from taxation in this State. * * *"

Petitioner is incorporated as a non-profit corporation. Its purposes as set forth in an amendment to its Articles of Incorporation adopted in November, 1959 are as follows:

"The purpose of the River Oaks Garden Club shall be the creation of a Society of Fine Arts, devoted wholly and without charge to the promotion of education and learning in the field of the fine art of gardening and related fine arts.

"Further, the River Oaks Garden Club shall maintain the historical building on the premises known as the Old Smith County School and is incorporated for the purpose of preserving the building which is not to be leased or otherwise used with a view to profit."

By the purposes thus expressed in the amended Articles of Incorporation, peti-

1. All references to statutes are to Vernon's Texas Civil Statutes unless otherwise indicated.

tioner has sought, in clear language, to bring its property within the exemptions of Secs. 14 and 20, quoted above. For purposes of this opinion we may assume it has done so. However, if its exemption is not authorized by the Constitution, it has done so to no avail.

Legislative authority to exempt property from taxation is found in Sec. 2, Art. VIII of the Constitution. Vernon's Texas Constitution. The section is quite lengthy and no good purpose would be served by quoting it in full. Petitioner contends that its right to exemption under the quoted provisions of Sections 14 and 20 of Article 7150 is authorized by the language of Sec. 2, Art. VIII which empowers the Legislature to exempt "institutions of purely public charity."

Because of the wording of Sec. 2, Art. VIII, as it was written originally, we held in Morris v. Lone Star Chapter No. 6, Royal Arch Masons, 68 Tex. 698, 5 S.W. 519, that it did not authorize exemption of institutions of purely public charity as such but only that property which was owned by such institutions and was used exclusively by them for purely public charity. We have adhered to that construction through the years in spite of frequent changes in internal language and punctuation in the section, and have denied exemption of property, not used exclusively by the owner for purposes of purely public charity. See City of Houston v. Scottish Rite Benev. Ass'n, 111 Tex. 191, 230 S.W. 978; State v. Settegast, Tex.Com.App., 254 S.W. 925; Benevolent & Protective Order of Elks v. City of Houston, Tex.Civ.App., 44 S.W.2d 488, writ refused; City of Longview v. Markham-McRee Memorial Hospital, 137 Tex. 178, 152 S.W.2d 1112.

The record in this case discloses that the property in question is not being used exclusively by River Oaks Garden Club; that other non-profit organizations are permitted the use of the property without charge. The Court of Civil Appeals denied tax exemption for that reason. We do not reach

the question decided by the Court of Civil Appeals because there are far more basic reasons for holding that exemption of petitioner's property is unauthorized by the Constitution.

The last clause in Sec. 2, Art. VIII provides that "all laws exempting property from taxation other than the property above mentioned shall be null and void." Respondents question the constitutionality of the purported exemption in Section 20 but do not question the constitutionality of that in Section 14.

Our Constitution containing the provision for exemption of institutions of purely public charity was ratified on February 15, 1876. In August of the same year the Legislature passed "An Act defining what money and property is subject to taxation or exemption, and the mode of listing the same." 8 Laws of Texas 1111. Among the exemptions provided in Sec. 5 of the Act was, "All buildings belonging to institutions of purely public charity, together with the lands belonging to and occupied by such institutions, not leased or otherwise used with a view to profit * * *." That exemption still exists. Sec. 7, Art. 7150. Neither the Constitution nor the early statutes defined an "institution of purely public charity." Nor, so far as we have been able to discover, had the courts of this state defined the term before 1905.

In 1905 the Legislature amended the Statute relating to the exemption of property from taxation, 12 Laws of Texas 314, and for the first time defined an institution of purely public charity, as follows:

"An institution of purely public charity under this act is one which dispenses aid to its members and others in sickness or distress, or at death, without regard to poverty or riches of the recipient, also when the funds, property and assets of such institutions are pledges [sic] and bound by its laws to relieve, aid, and administer in any way to the relief of its members when in want, sickness and distress and pro-

vides homes for its helpless and dependent members and to educate and maintain the orphans of its deceased members or other persons."

Except for changing the word "pledges" to "placed," the definition has been preserved through the years and now appears as a part of Sec. 7, Art. 7150. While the primary purpose of the legislative definition was probably to insure that exemption was accorded property of organizations dispensing charity only to a small segment of society, included also is the concept that an institution of purely public charity is one which dispenses aid to the sick, the distressed and the needy, by providing for their basic needs. The necessary converse of the legislative definition is that an organization cannot be an institution of purely public charity unless its funds, property and assets are pledged and used to provide for the basic needs of the sick, distressed and needy, whether the benefits be extended only to a small segment of society or to the public generally.

 This Court suggested a definition of an institution of purely public charity, without reference to the statutory definition but largely in the same terms, in City of Houston v. Scottish Rite Benev. Ass'n, 111 Tex. 191, 230 S.W. 978, 981, where we said:

"In our opinion, the Legislature might reasonably conclude that an institution was one of 'purely public charity' where: First, it made no gain or profit; second, it accomplished ends wholly benevolent; and, third, it benefited persons, indefinite in numbers and in personalities, by preventing them, through absolute gratuity, from becoming burdens to society and to the state."

Here, again, the primary purpose of the definition suggested was to meet the contention that an institution which dispensed aid only to its own members was not an institution of purely public charity; but

here again, also, is the concept that an institution of purely public charity is one whose charity benefits persons "by preventing them, through absolute gratuity, from becoming burdens to society and to the state." We did not leave our meaning in that respect in doubt. We continued:

"Charity need not be universal to be public. It is public when it affects all the people of a community or state, by assuming, to a material extent, that which otherwise might become the obliation or duty of the community or the state."

The necessary converse of that statement is that an organization is not an institution of purely public charity within the meaning of the constitutional exemption unless it assumes, to a material extent, that which otherwise might become the obligation or duty of the community or the state.

 The courts of some states construe constitutional and statutory tax exemptions accorded institutions of purely public charity liberally, some strictly. See Zollman's American Law of Charities, pp. 460–468. The courts of Texas have been committed to a strict construction since an early date. See Morris v. Lone Star Chapter No. 6, Royal Arch Masons, 68 Tex. 698, 5 S.W. 519. Moreover, a strict construction seems more in harmony with the intent of the people when they adopted the Constitution in 1876, and conforms to our announcement in Cox v. Robison, 105 Tex. 426, 150 S.W. 1149, 1151, that "The fundamental rule for the government of courts in the interpretation or construction of a Constitution is to give effect to the intent of the people who adopted it." The action of the delegates in the Constitutional Convention of 1875 on various tax exemption proposals, as reflected in the Journal of the Convention, indicates that they intended that exemptions from taxes be narrow and limited.

In Morris v. Lone Star Chapter No. 6, Royal Arch Masons, 68 Tex. 698, 5 S.W. 519, 520–521, we stated the underlying rea-

son for a strict construction of the "used exclusively" provision of the constitutional tax exemption, as follows:

"The reason of these rules would seem to be that it is but just and equitable that the property of all persons and associations of persons should bear the burdens of government in equal proportion; and hence it is to be presumed that the law-makers did not intend to make an exception in favor of any class unless that intention be clearly expressed."

In Massachusetts General Hospital v. Inhabitants of Belmont, 233 Mass. 190, 124 N. E. 21, 25, the Supreme Judicial Court of Massachusetts stated the rationale for exemption from taxes of property of charitable institutions as well as a sound reason for strict construction in these words:

"One ground upon which exemptions from taxation of charitable institutions like the complainant can be justified in a constitutional sense is that they minister to human and social needs which the state itself might and does to a greater or less extent undertake to satisfy. The ultimate obligation of the state thus is discharged by the private charity. To that extent the state is relieved of its burden. [In re] Opinion of [the] Justices, 195 Mass. 607, 609, 84 N.E. 499. An exemption from taxation is in the nature of an appropriation of public funds, because, to the extent of the exemption, it becomes necessary to increase the rate of taxation upon other properties in order to raise money for the support of government."

With the foregoing discussion of the law in mind, we now examine the facts in the record before us to determine whether petitioner is an "institution of purely public charity" within the meaning of the constitutional provision.

■ The property for which exemption is sought is in the City of Houston and is owned by petitioner. Situated on the prop-

erty is the Old Smith County Schoolhouse, a landmark in Harris County of historical value. Petitioner has, at considerable expense, renovated the building and beautified the grounds. One area is devoted to experimental gardening. The building and grounds are open six days a week to any members of the public generally as care to visit, without charge. There is a library in the building and a few ornamental works of art about the premises. Petitioner holds its regular meetings in the building, and, on occasions, invites speakers on gardening, horticulture, flower-arrangement, etc. Such members of the public generally as care to do so may attend the lectures, without charge. The building is not used by petitioner for social functions. Other non-profit organizations with similar purposes are permitted to use the building for their meetings, without charge. Some of the organizations which have been using the building are The Houston Symphony Society Women's Council, The Amarylis Society, The African Violet Society and The Gulf Coast Botanical Research Society. In additional to beautifying its own grounds, petitioner has spent some $4,000 on beautification of a section of Memorial Drive. It publishes a book on gardening which is available in Houston and Southeast Texas.

We hold on the facts here stated that petitioner is not an institution of purely public charity. Admittedly, its main activity is to educate and enlighten its members, and such other persons as care to attend its meetings or read its book, in the art of growing and arranging flowers. That activity may be one which the state or local government could finance from taxes, a question we need not decide, but it is certainly not an activity which either the state or local government is under a duty or an obligation to finance in providing educational opportunities and benefits to its society.

If petitioner may claim tax exemption as a constitutional "institution of purely public charity," there can be no end of exemptions accorded clubhouses and meeting places owned by small groups of persons of com-

mon aesthetic interests who associate themselves to promote and enjoy their particular interests. All they would need do would be to declare theirs to be a society of fine arts, devoted exclusively to education and learning in the field of their particular interests, and admit the public, without charge, to their clubhouse and meetings. It is but a half stride from the art of gardening to the art of interior decorating, and less than a half stride to the art of dramatics. Many others are but a stride away.

■ The Constitution provides separate exemptions of properties owned and used for educational purposes and of properties owned and used for charitable purposes. The exemption in the field of education is of "all buildings used exclusively and owned by persons or associations of persons for school purposes." Sec. 2, Art. VIII, Constitution. If an organization uses its property exclusively for *school* purposes, the property is exempt whether the operation be purely charitable or for profit. The exemption is justified because by the operation of schools the state or community is relieved of its obligation to provide through taxes for the formal education of its youth. Cassiano v. Ursuline Academy, 64 Tex. 673. Respondent does not claim exemption under this provision, and could not do so successfully. And yet, it seeks the same result by claiming exemption as a purely public charity because of its educational contributions in gardening and flower arrangement, principally to its own members, which neither the state nor the community is obligated to provide. We cannot believe that such an exemption was ever intended by either the framers of the Constitution or the people who adopted it.

We are not to be understood as holding that property of an institution of purely public charity, devoted to the promotion of education, cannot be exempt from taxes unless it be used exclusively for school purposes. We would have an entirely different question if exemption were sought for property owned and used exclusively by an institution or foundation whose purpose was to grant scholarships or otherwise to aid in providing formal education to deserving persons.

■ Apposite here is Dickison v. Woodmen of the World Life Ins. Soc., Tex.Civ. App., 280 S.W.2d 315, writ refused. In that case Woodmen of the World claimed tax exemption for its property under Art. 10.39 which expressly declares that every fraternal benefit society is a charitable and benevolent institution and directs that their property shall be exempt from taxation. The court denied exemption on the ground that Woodmen was not in fact an institution of purely public charity and that it could not be made one by mere legislative declaration. No more may a charter declaration of a worthwhile purpose make an institution one of purely public charity if it is not one in fact.

■ Having concluded that petitioner is not an institution of purely public charity, we need not decide the constitutionality of the exemption quoted above from Sec. 20, Art. 7150; nor need we decide whether petitioner would be an institution of purely public charity if its sole purpose and activity were the preservation of the Old Smith County Schoolhouse. The fact that an organization performs some charitable acts or engages in some charitable activity is not enough to qualify it for the tax exemption provided in Sec. 2, Art. VIII of the Constitution. Masonic Temple Ass'n v. Amarillo Independent School Dist., Tex.Civ.App., 14 S.W.2d 128, writ refused; B.P.O.E., Lodge No. 151 v. City of Houston, Tex.Civ. App., 44 S.W.2d 488, writ refused; Dickison v. Woodmen of the World Life Ins. Soc., Tex.Civ.App., 280 S.W.2d 315, writ refused.

■ In sustaining the validity of a charitable trust created in a will, the Waco Court of Civil Appeals, relying on the Restatement of Trusts and certain legal texts and encyclopedias, stated the "Charitable purposes include (a) the relief of poverty;

(b) the advancement of education; (c) the advancement of religion; (d) the promotion of health; (e) governmental or municipal purposes; and (f) other purposes the accomplishment of which is beneficial to the community." Powers v. First National Bank of Corsicana, Tex.Civ.App., 137 S.W.2d 839, 842, affirmed, 138 Tex. 604, 161 S.W.2d 273. See also Boyd v. Frost Nat. Bank, 145 Tex. 206, 196 S.W.2d 497, 502, 168 A.L.R. 1326. But we are not here concerned with the purposes for which charitable trusts may be created; rather, we are here concerned with the intent of those who framed and adopted the Constitution in extending tax exemptions to properties owned by institutions of purely public charity. Valid charitable trusts may be institutions of purely public charity within the meaning of Sec. 2, Art. VIII of the Constitution, but they are not necessarily so.

It may well be that all property of all non-profit organizations or institutions whose activities are in any way beneficial to any segment of society should be exempt from taxes. For like reason, it may be that all property used exclusively for purposes beneficial to society should be exempt from taxes even though owned by persons or organizations otherwise bent on earning profits. But those are not the exemption provisions of our present Constitution. The way to provide them is by amendment of the Constitution.

The judgment of the Court of Civil Appeals is affirmed.

NORVELL, Justice (dissenting).

I am unable to agree with the narrow and restricted concept of the term "charity" which for the first time this Court has adopted with reference to the constitutional power of the Legislature to grant tax exemptions to charitable institutions. The constitutional grant upon which the legislative power rests has in some respects been narrowly construed, but a restrictive construction has not heretofore been applied in determining whether or not a particular activity is charitable. In my opinion, it is not only unnecessary but unfortunate to restrict the meaning of the term "charity" to those actions which tend to prevent individuals from becoming burdens to society and to the State, or to those activities which either the state or local government is under a duty or an obligation to finance in providing educational opportunities and benefits to its society. This is charity in its most restricted and narrow sense. The test of preventing persons from becoming burdens to society and the State is only properly used to determine whether an activity or trust with a limited class of beneficiaries can be properly classified as a charity. And to say that charities in the educational field must be restricted to those activities which the state or local government is under a duty or obligation to finance is to adopt a standard which is both overly restrictive and highly uncertain. Where and when may we expect agreement as to educational subjects which the state or local government is under an obligation to finance? However, while my difference with the Court may not be as deep as a well, it rather approaches such proportions, and hence there is nothing to be gained by discussing the variations of wording in which the rule adopted by the Court might be couched. The import of the Court's holding is clear: the only charity which is eligible for legislative exemption is one whose activities will *directly* lessen a financal burden which would otherwise be borne by the taxpayer. This is not my concept of a charity.

The Texas courts have definitely adopted the classification of charitable purposes set forth in the American Law Institute's Restatement of Law of Trusts. See, Powers v. First National Bank of Corsicana, Tex. Civ.App., 137 S.W.2d 839, affirmed 138 Tex. 604, 161 S.W.2d 273; Frost National Bank v. Boyd, Tex.Civ.App., 188 S.W.2d 199, affirmed, Boyd v. Frost National Bank, 145 Tex. 206, 196 S.W.2d 497, 168 A.L.R. 1326.

It was said by this Court in the case last cited that:

"The authorities leave no doubt that the words 'charitable purposes' have a fixed meaning in law and that a judicial determination may be made with satisfactory certainty in every case where the question of whether a given purpose is or is not charitable arises. Chapter 4 of the statutes of 43 Elizabeth, enacted in 1601, known as the Statute of Charitable Uses, although not adopted in Texas, 'is regarded by many authorities as the principal test and evidence of what the law will consider charitable uses,' and the enumeration of those uses as set out in the preamble to the act was accepted as authoritative in Powers v. First National Bank of Corsicana, 138 Tex. 604, 161 S.W.2d 273.

"Illuminative in this regard is the following quotation from Zollman's American Law of Charities, § 187, p. 123: 'It must never be forgotten that the words "charity" and "charitable" are technical terms. Since the statute of Elizabeth, they have had a technical meaning both in England and America, including even those states in which the statute has been repealed or has not been re-enacted or adopted. "They are lifted from their popular and lexicographical meaning. In them survives a history from which they have derived a special significance. They condense volumes of controversy and decision into a phrase which must be now read by the growing light under which it has been developed."'

"And the following excellent definition of 'charity' and 'a charitable use' is evolved in 2 Perry, Trusts and Trustees, 7th ed., § 697, p. 1182: 'It will be seen that the words "charity" and "a charitable use" have a somewhat technical meaning in the law. * * * The word "charity" in its *widest* sense, denotes all the good affections men ought to bear toward each other; in a more restricted sense, it means relief or alms to the poor; but in a court of chancery the signification of the word is derived from the statute of Elizabeth, [and a public charity need have no special reference to the poor.] Hence it has been said that those purposes are considered charitable which are enumerated in the statute, or which by analogy are deemed within its spirit or intendment. * *

"Current legal concepts of what are charitable purposes are well gathered into the following classification in II Restatement, Trusts, § 368, p. 1140:

" 'Charitable purposes include

(a) the relief of poverty;
(b) the advancement of education;
(c) the advancement of religion;
(d) the promotion of health;
(e) governmental or muncipal purposes;
(f) other purposes the accomplishment of which is beneficial to the community.' "

The charter of the River Oaks Garden Club provides that:

"The purpose of the River Oaks Garden Club shall be the creation of a Society of Fine Arts, devoted wholly and without charge to the promotion of education and learning in the field of the fine art of gardening and related fine arts.

"Further, the River Oaks Garden Club shall maintain the historical building on the premises known as the Old Smith County School and is incorporated for the purpose of preserving the building which is not to be leased or otherwise used with a view to profit."

In my opinion the River Oaks Garden Club, under and by virtue of its charter, is an organization for the advancement of education; and hence is a corporation created for charitable purposes under the definition contained in the Restatement.

Admittedly, the Powers and Boyd cases were concerned with charitable trusts. They involved the rule against perpetuities which is a public policy doctrine designed to insure that real property remain a comparatively free article of commerce. An exception to the rule is recognized in the case of charitable trusts upon the theory that the removing of property from the stream of commerce is offset or overbalanced by the public good derived from the charitable institution. In determining whether or not the concept of a "charity" as developed in the field of charitable trusts is valid in the area of tax exemption, it is well to bear in mind that a tax exemption is based upon a similar premise to that supporting an exception to the rule against perpetuities, namely, that the contribution to the public good made by the charitable institution overbalances the public loss which is caused by removing the property from the tax rolls.

Article 8, § 2 of the Texas Constitution, authorizes the Legislature to exempt from taxation "all buildings used exclusively and owned by persons or associations of persons for school purposes * * * and [all] institutions of purely public charity * *." Morris v. Lone Star Chapter No. 6, R.A.M., 68 Tex. 698, 5 S.W. 519. The use of the word "public" in connection with the word "charity" really adds nothing to it. The term "public charity" is quite commonly used in legislative enactments exempting from taxation those institutions engaged in "purely public charity"; but accurately speaking, all charities by definition must be public. Powers v. First National Bank of Corsicana, Tex.Civ.App., 137 S.W.2d 839, 1. c. 842. The word "purely" as used in the Constitution refers to the qualify of the charity, i. e., "that it should be wholly altruistic in the end to be attained, and that no private or selfish interest should be fostered under the guise of charity." City of Houston v. Scottish Rite Benevolent Association, 111 Tex. 191, 230 S.W. 978. Insofar as this case is concerned, the "charity" of the constitutional provision relating to tax exemption is essentially the same as the "charity" considered by the courts in relation to the law of trusts and has been regarded as analogous by this Court. Powers v. First National Bank of Corsicana, 138 Tex. 604, 161 S.W.2d 273. The difference in wording employed in the Constitution and that employed by the courts in discussing charitable trusts is of little or no significance.

I do not regard any of the Texas authorities cited by the Court of supporting its restricted view of charity. The statute of 43 Elizabeth anedates the Texas Constitution of 1876, and hence the framers thereof, being concerned with the preparation of a basic legal document, may be supposed to have used terms of recognized legal significance. It is reasonable to conclude that the term "charity" was used in its legal and technical sense rather than to designate something in the nature of a dole, restricted to such objectives as would prevent poor and indigent people from becoming burdens to society and to the State. It has been said on respectable authority that "man does not live by bread alone."

The relief of poverty is one type of charity, and a commendable one at that. It is mentioned first in the classifications set forth in the Restatement. As heretofore pointed out, when this kind of charity is involved and there is a restriction upon the class of beneficiaries, the element of preventing the members of the restricted class from becoming burdens to society is an important consideration. In other classifications of charity it may have little or no significance.

The 1905 Act now carried forward as Article 7150, § 7, Vernon's Ann.Tex.Stats., does not purport to define an institution of purely public charity in the constitutional sense.

In Morris v. Lone Star Chapter No. 6, R.A.M., 68 Tex. 698, 5 S.W. 519, this Court made no attempt to state an all-inclusive definition of "charity" or "charitable purposes." The Court expressly pretermitted a decision of whether the property-owning

corporation was a charitable institution. The property involved was a Masonic Temple, and a portion of the building had been leased for profit. This was the turning point of the case. The Court concluded that the building was not used exclusively for purely charitable purposes. The use contemplated by the Constitution was held to be "the actual and direct use for the purposes of the association, and not a use by others for revenue, although that revenue may be exclusively appropriated for the objects of the charity."

In City of Houston v. Scottish Rite Benevolent Association, 111 Tex. 191, 230 S.W. 978, the only charitable use or purpose involved was *the relief of poverty*. The charter of the benevolent association as set forth in the agreed statement of facts provided that:

> "The purpose for which said corporation is formed is to provide for the relief of needy Masons, their wives, widows, mothers and children. * *"

In this category of charities, the objective of preventing individuals from becoming burdens to society is an important consideration. However, the building owned by the association was used by the San Jacinto Lodge of Perfection No. 6 and the Rose Croix Chapter No. 5, which were Scottish Rite Lodges. The holding of this Court was that as the agreed statement of facts showed that the two Lodges mentioned were engaged in the work of the Masonic order which was "not an order 'that does nothing but dispense charity.' But it does dispense charity," such Lodges were not engaged in purely charitable activities

In Dickison v. Woodmen of the World Life Ins. Soc., Tex.Civ.App., 280 S.W.2d 315, wr. ref., it was held that the Woodmen of the World Life Insurance Society, which owned the property claimed to be tax exempt, was not an institution of purely public charity. The Court said:

> "The question is then narrowed to the inquiry of whether or not an as-

sociation or society which is authorized to issue benefit certificates in the nature of life insurance on a contractual basis and apply its assets acquired from assessments or any other source to the payment of such certificates, can reasonably be classified as an institution for the accomplishment of 'ends wholly benevolent'. City of Houston v. Scottish Rite Benev. Ass'n, 111 Tex. 191, 230 S.W. 978, 981.

> "Under the Texas decisions, despite the attempted legislative classification, it must be held that such ends are not wholly benevolent and such an organization as here involved is not an institution of 'purely public charity' within the constitutonal definition." [280 S.W.2d 315, 319]

The other authorities cited by the Court are of similar import. They represent a restrictive or conservative view of charity only in that they hold that the organization claiming the exemption must have purely charitable objectives unmixed with noncharitable objectives or purposes. The case last mentioned is illustrative. An organization which sells life insurance and also maintains a hospital is not an institution of purely public charity.

Similarly, the use to which the property is put must be wholly charitable and unmixed with non-charitable uses. Morris v. Lone Star Chapter No. 6, R.A.M., 68 Tex. 698, 5 S.W. 519; City of Houston v. Scottish Rite Benevolent Association, 111 Tex. 191, 230 S.W. 978.

I have no quarrel with those cases, but they do not stand for the proposition that no organization or no use may be classed as charitable unless the activities of the organization or the uses made of its property be such as will tend to directly lessen a financial burden which would otherwise be borne by the taxpayer. Had the framers of the Constitution intended to limit the tax exemption authorization to the relief of poverty, they could have easily said so instead of employing the broader term of "charity."

The promotion of the fine arts of gardening and related fine arts and the maintenance of historical buildings may not tend to prevent persons from becoming charges upon society; such activities may not be those which the state or local government is under a duty or obligation to finance (although there may be some argument about historical sites); yet under the legal definition of "charity," they should be classed as charitable activities and hence within the meaning of the constitutional provision which authorizes the Legislature to grant tax exemptions. And here I would not enter the metaphysical field in order to attempt a distinction between that which may be classed as educational and that which is merely aesthetic. Whenever such distinctions are attempted, the tendency is to substitute a subjective standard for one which should be objective, and regard that which we consider worthwhile as being educational and that in which we have little or no interest as being merely aesthetic. In this area the Legislature has some discretion. It need not exempt all activities which may be classed as "charitable" in the constitutional sense. In my opinion, the Legislature is constitutionally authorized to exempt the property of organizations such as the River Oaks Garden Club from taxation. They may not be schools, but they are organizations for the advancement of education.

As the constitutional provision is not self-enacting and constitutes a mere authorization, it follows, as above indicated, that the exemption claimed must be not only within the permissible terms of the Constitution, but also within the actual provisions of the exempting statute. Santa Rosa Infirmary v. City of San Antonio, Tex.Comm.App., 259 S.W. 926. Article 7150, Vernon's Ann. Tex.Stats., contains some twenty-one sections purporting to exempt from taxation certain described properties under the authorization contained in Article 8, § 2, of the Texas Constitution. All of these are different in wording, and confusion may result from attempts to apply statements of courts made in construing one article to the

problems of construction encountered in determining the meaning of another article. For the purposes of the present case, however, it is apparent that the property of River Oaks Garden Club comes clearly within the exemption set out in Article 7150, § 14, which reads as follows:

"14. Art Galleries, etc.—All property belonging to Art Leagues and Societies of Fine Arts, whether incorporated or not, which are devoted wholly and without charge to the promotion of education and learning, including Art Galleries and exhibits therein contained, the land upon which the same are situated, which is devoted exclusively to such purposes, and also all land, money, pictures and other works of art and all other personal property which may be necessary and in actual use for the purpose of carrying out said educational feature."

So far, I am in agreement with the Court of Civil Appeals. In its opinion that court cited the case of Power v. First National Bank of Corsicana, Tex.Civ.App., 137 S.W. 2d 839, aff'd 138 Tex. 604, 161 S.W.2d 273, as adopting a definition of charity which is applicable to the granting of tax exemptions. Seemingly also, that court was of the opinion that had the use of the property been exclusive with the petitioner, and had the property been used in accordance with the terms of its charter, the statutory tax exemption of Article 7150, § 14, would have been applicable. The reversal of the trial court's judgment by the appellate court resulted from the conclusion, arrived at reluctantly, that "the use of the property in question by other organizations, even though such organizations have similar purposes and use patterns" destroyed the tax exemption.

This holding by the Court of Civil Appeals is much narrower than the holding of this Court. Under the opinion of this Court the property owned by petitioner could never meet the requirements for tax exemption although it be used exclusively

by the petitioner and in strict conformity with its charter. Under the holding of the Court of Civil Appeals, it is the *use* of the property *by other organizations* that renders the property ineligible for tax exemption.

If the premise be accepted that "charitable purposes" as defined in the Powers and Boyd cases are applicable to the tax exemption authorization provision of the Constitution (as I think it should be), the mere fact that a charitable use is sometimes made of the property by some organization other than the owner, should not affect the tax exemption classification of the property so long as no charge is made for such use. In the present case the Court of Civil Appeals accurately describes the use of the property made by others as being of a similar pattern to the uses made of the property by the petitioner. This Court's opinion names some of the users of the property, i. e., Houston's Symphony Society Women's Council, the Amaryllis Society, The African Violet Society and the Gulf Coast Botanical Research Society. All have purposes which are cultural in nature and similar to the purposes designated in petitioner's charter. On principle, it is illogical to say that the petitioner could promote education along botanical lines and its property would be tax exempt; but that if the property were used temporarily and rent free by the Gulf Coast Botanical Research Society for a similar purpose, the property would lose its tax exemption.

In a sense, whenever a tax exemption is granted, the State and its political subdivisions indirectly contribute a portion of the funds necessary to support the organization owning the property. The organization need not, however, be one that is eligible for tax support in order that its property be entitled to tax exemption. Churches and religious organizations are examples of institutions which may not be supported by taxation, yet their properties may be tax exempt. Once it be determined that certain activities are worthy of indirect State support through tax exemptions, it is difficult to justify the line of demarcation recognized by the Court of Civil Appeals. That court, quite obviously, made the "exclusive use by owner" distinction because of its belief *that prior decisions of this Court so required.*

In the quotation from City of Houston v. Scottish Rite Benevolent Association, 111 Tex. 191, 230 S.W. 978, set forth in the opinion of the Court of Civil Appeals, an exclusive use by the owner of the property is mentioned. However, the question of whether a use of property permitted by a benevolent association as owner thereof is a use by the association or a use by someone temporarily in charge thereof may become an elusive and at times a somewhat insubstantial inquiry. For example, should a speaker paid by the Gulf Coast Botanical Research Society deliver a lecture upon a botanical subject in the building owned by the River Oaks Garden Club and special invitations be sent to members of both organizations and a general invitation issued to the public, would it be correct to say that the use of the building for such purpose was *not* a use by the River Oaks Garden Club? The factual situation suggested may be varied in detail, but each variation will serve to demonstrate the irrelevance of the inquiry insofar as the policy of the law supporting tax exemption is concerned. If the owner be a charitable organization and the use of the property be charitable, then the exemption should be upheld.

To my mind, the Scottish Rite case supports rather than militates against this thesis. The property was owned by the benevolent association. It was used, however, by two Masonic Lodges mentioned in the opinion—San Jacinto Lodge of Perfection No. 6 and Houston Chapter of Rose Croix No. 5. This Court considered the nature of the use of the premises by these two Lodges as being highly important, although they were not the owners of the property. If it would have been sufficient to the decision of the case to simply point out that the benevolent association as owner was not using the building to the exclusion of all

other organizations, why was it necessary to discuss whether or not the Masonic lodges were charitable organizations? The Court did not turn its decision upon the circumstance that the use of the property was not exclusive with the owner, but upon the proposition that the use made of the building by the non-owning lodges was not a purely charitable use. In its opinion this Court said:

"By the very manner and terms of this property's acquisition, it was required to be used, as it was in fact used, by the two Masonic orders, 'to enable them to pursue their work as Masonic lodges,' such work being, as agreed, only partly charitable.

"To the extent that the property was used by Masonic organizations, whose activities included other fields than charity, it was not, and could not be, used exclusively by an institution of purely public charity. Not being used exclusively by an institution of purely public charity, the claim to exemption under the constitutional provision fails, and our answer to the certified question is that the property was subject to taxation." 230 S.W. 978, 981.

I find no basis in either the constitutional provision nor in the applicable statutory wording to support the "exclusive use by *owner*" theory. We should be wary of the uncritical adoption of statements made in court opinions where the issue of "exclusive use by owner" was really not involved. I submit that the Scottish Rite case, when considered in the light of the contentions raised and the matters actually determined by the Court, supports my position here. The non-owning users of the building were not purely charitable organizations; hence there was no valid tax exemption. In the present case, it appears that the non-owners who make temporary uses of the building are using the same for educational and charitable purposes. The tax exemption should therefore be upheld. I agree with petitioner's statement that:

"The requirement is that the Garden Club use the premises exclusively for the promotion of education and learning, without charge. The fact that other organizations of the same purpose and use-pattern are allowed to assist in fulfilling that purpose, under the control of the Garden Club, meets the letter and the theory of Section 14 and Article 8, Sec. 2 of the Constitution, as construed by our Courts."

I would reverse the judgment of the Court of Civil Appeals and affirm that of the trial court. Accordingly, I respectfully dissent from the order of the court affirming the judgment of the Court of Civil Appeals.

GRIFFIN, SMITH and GREENHILL, JJ., join in this dissent.